LOBRANO, Judge.
This suit arises out of a health insurance policy issued by Reserve Life Insurance Company (Reserve) thru its agent, Preslie Pryor, to Mildred and Robert J. Murray, Sr. The Murrays filed suit seeking damages as a result of Reserve’s denying coverage for Mrs. Murray’s illnesses. Mrs. Murray died during the pendency of these proceedings, and her husband and son were substituted as party plaintiffs.
The lower court rendered judgment against Reserve for all claims occurring from the date the policy was purchased until its cancellation by the company. Both parties have appealed. Reserve alleges that the trial court was in error and that it owes nothing. The Murrays allege that Reserve should pay for all Mrs. Murray’s claims, as well as attorney fees and penalties. They also argue that the trial court erroneously denied their right to prove detrimental reliance or equitable estoppel.
In January of 1977 Mr. & Mrs. Murray filled out an application with Mrs. Pres-lie Pryor (Pryor), an agent with Reserve, for a casualty and health policy. The application was filled out at the Murray’s home with Pryor. Without going into detail suffice it to say the application contains numerous questions about pre-existing illnesses, diseases and health history of the applicants. The application was answered in the negative with respect to those questions. The parties differ in their testimony as to who said what while the application was completed. The Murrays contend that Pryor did not ask them all the questions appearing on the application, while Pryor contends they filled out the application, answered all the pertinent questions in the negative, reviewed and signed it. Specifically Mr. Murray states that they volunteered to Mrs. Pryor their past medical history but were not asked about their previous hospitalizations. Mrs. Murray, by deposition, testified they were not asked any questions about prior health problems, nor did they volunteer any information. Reserve subsequently issued its policy to the Murrays.
Dr. Richard Howard testified at trial that he treated Mrs. Murray from March of 1970 thru June 23, 1976. His diagnosis as of September 8, 1970 was Mrs. Murray suffered from diabetes with symptoms of angina and coronary arteriosclerosis and hypertension. Her EKG’s at that time specifically revealed myocardial damage, typical of a healed anterial lateral wall injury pattern.
Dr. Richard Rawls saw Mrs. Murray on August 9, 1976 with complaints of muscle spasms in her back. At that time she gave him a history of being a diabetic and having arteriosclerotic heart disease.
Dr. Ernest Schiro testified he first saw Mrs. Murray on October 11, 1976 complaining of chest pain with exertion and problems with her lower back. The history given Dr. Schiro is the same given to Drs. Howard and Rawls, diabetes and heart disease. He diagnosed her as being diabetic with anterolateral ischemia, a lack of full blood supply to the heart.
The record reveals the following visits to the hospital by Mrs. Murray from the issuance of the policy until her death.
April 14, 1977 — Arteriosclerotic Heart Disease
May 4,1977 (ASHD), Coronary insufficiency, and cardiac arrhythmia.
Aug. 8, 1977 — Diabetes Meliitus, uncontrolled.
Aug. 23,1977
Nov. 12, 1978 — Severe coronary ischemia,
Dec. 21,1978 ASHD, Diabetes Meliitus, severe peripheral vascular disease, Triple Coronary By-pass Surgery, Recovery from Surgery.
Feb. 2, 1979 — Cellulites of left leg and foot,
March 10, 1979 severe Peripheral arteriovascular disease, severe coronary artery disease, ASHD.
Sept. 6, 1979 — Leg ulcer secondary to diabetes
Oct. 3,1979 and arteriosclerotic cardiovascular disease.
Oct. 6, 1979 — Oct.Cellulites and ulceration of
27, 1979 right leg, uncontrolled Diabetes Meliitus, ASHD, Coronary Ischemia Hypokalemia, Congestive Heart Failure.
*57 May 29, 1980 — Acute Coronary Ischemia,
June 12,1980 Acute Coronary Arrhythmia, ASHD, Uncontrolled Diabetes Mellitus, Electrolyte Imbalance, Urinary Tract Infection.
Aug. 16, 1980 — Acute Coronary Arrhythmia,
Aug. 28, 1980 Acute Coronary Ischemia with ASHD, Diabetes Millitus, Infection.
Sept. 9, 1980 — Acute Pulmonary Edema,
Sept. 18,1980 ASHD, Anasorca, Congestive Heart Failure, Diabetes Mellitus, Cardiac Arrhythmia, Intermittent Hypokalemia.
Oct. 30, 1981 — Anasarea, Congestive Heart
Nov. 13, 1981 Failure, ASHD, Diabetes Mellitus.
Mar. 16, 1982 — Acute Myocardial Infarction,
May 18,1982 Congestive Heart Failure.
The trial judge resolved the factual dispute with Reserve’s agent, Pryor, in favor of the Murrays. His reasons state: “The Court does not believe the. testimony of Mrs. Preslie N. Pryor, the agent of the defendant.” Based on this credibility call, we must assume that the trial court was of the opinion that either Pryor did not ask the required questions or asked the questions but wrote the incorrect answer. In either case, the court felt that the policy should be enforceable until the time it was cancelled by Reserve.
Reserve argues that the very terms of the policy make it absolutely void irrespective of the representations or misrepresentations made upon application, citing Estate of Borer v. Louisiana Health Service and Indemnity Co., 398 So.2d 1124 (La. 1981). The Murrays counter with the argument that an insurer or its agent cannot be allowed to misrepresent and then rely on its own fraudulent misrepresentation as a defense, citing Bank of Coushatta v. Thomas, 378 So.2d 1041 (La.App. 2nd Cir. 1979).
We agree with Reserve’s argument on this issue. The policy defines sickness as follows:
“SICKNESS means a disease, impairment or physical condition first manifesting itself while the Coverage for which claim is made is in force.”
In Estate of Borer, supra, our Supreme Court in differentiating the defense of misrepresentation on application and the defense of preexisting condition, stated:
“The so-called preexisting condition defense, unlike the misrepresentation defense is a question of contract interpretation. The availability of the defense is not dependent upon statements made by the insured in the application; the question is whether the policy excludes coverage for preexisting conditions.” Id. at 1126.
The medical evidence is conclusive that Murray’s claims are the result of progressions of previously diagnosed problems. Specifically they include diabetes, arterio-sclerotic heart disease, coronary ischemia, circulatory problems which resulted in leg ulcers, and heart failure. We conclude that Murray’s argument is directed to the defense of misrepresentation, rather than preexisting condition, and therefore hold that the trial judge was in error in not upholding the defense of preexisting condition.
This conclusion however, does not end the case. Ten days prior to trial the Mur-rays attempted to file a second amended petition alleging a cause of action based on detrimental reliance or equitable estoppel. In essence they claim that in reliance on the Reserve policy they cancelled a policy they had with Travelers Insurance Company, and are therefore entitled to the benefits they would have received from that policy. The trial court did not allow the amended petition. The Murrays argue that this was error and we agree.
Although estoppel is not favored in our law, Rodden v. Davis, 293 So.2d 578 (La.App. 3rd Cir.1974), writ den. 296 So.2d 832 (La.1974), the doctrine is nevertheless well recognized. It has been defined by our Supreme Court as follows:
“Equitable estoppel, or ‘estoppel in pais’ can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such *58 reliance. Thus, there are three elements of estoppel: (1) representation of conduct or word; (2) a justifiable reliance; and (3) a change in position to one’s detriment because of that reliance.” Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975).
We hold that the trial court was in error in not allowing Murray’s amended petition to be filed alleging this cause of action and in failing to hear the evidence on this issue. Since the record does not contain sufficient evidence for us to decide that issue, we remand for a trial on this issue.
For the above and foregoing reasons, the decision of the lower court is reversed, and this matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.