488 So.2d 305 (1986)
Arcile (Archie J.) VIDRINE, Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 85-376.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*306 Brinkhaus, Dauzat, Peter F. Caviness, Opelousas, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before DOMENGEAUX and YELVERTON, JJ., and JACKSON, J. Pro Tem.[*]
DOMENGEAUX, Judge.
This is an appeal from a lawsuit filed by plaintiff-appellee, Arcile Vidrine, against defendant-appellant, Travelers Insurance Company, seeking coverage for hospitalization and related medical expenses under a policy of health insurance issued to Vidrine by Travelers. Travelers denied coverage based upon an exclusion in the policy. The district court found the exclusion inapplicable and allowed recovery. Travelers appealed the decision of the district court, and Mr. Vidrine answers that appeal seeking penalties and attorney's fees.
On December 13, 1982, Arcile Vidrine applied for hospitalization insurance under a group policy issued by Travelers Insurance company to Louisiana Farm Bureau Federation, of which Mr. Vidrine was a member. The policy went into effect on February 1, 1983, and provided for a $200.00 deductible which the insured was required to pay for hospitalization during a calendar year before Travelers was exposed to claims by the insured.
In the initial application Mr. Vidrine attested that he was not covered by Medicare. The policy contained a special provision in the event that the insured was eligible for Medicare. That condition provided:
"When a covered person becomes eligible under Medicare, the federal government's Medicare program will pay for some of the same hospital and medical expenses which are covered under this Plan. The Travelers will still pay benefits under this Plan. However, Medicare will pay its benefits first.
* A benefit may be provided under both Medicare and this Plan. The Travelers will determine the amount this Plan would normally pay. Then the amount payable under Medicare for the same expenses will be subtracted from the amount this Plan would have normally paid. This Plan will pay you the difference. You will never be paid more for the same expenses under both this Plan and Medicare than this Plan would have paid alone.
* If a benefit is provided under Medicare only, no payment will be made under this Plan.
There are two parts to the federal Medicare Program. They are Part A (Hospital Care Plan) and Part B (Medical Care Plan). The Travelers assumes every person who becomes eligible under Medicare is covered for Part B. Even if a person does not have Part B, the amount payable under Part B will be subtracted from the amount this Plan would normally pay.
Co-ordination of Benefits will not apply to benefits provided by the federal Medicare program."
In July of 1983 at the request of Mr. Vidrine, the policy was amended to provide for a $2,000.00 deductible. All other policy provisions remained the same, including the above quoted proviso regarding Medicare benefits. At the time the application to modify the deductible was completed on *307 June 8, 1983, Mr. Vidrine provided information that he was not eligible for Medicare.
Some time after September of 1983 Mr. Vidrine became eligible for Medicare, but failed to report this change in status to Travelers. The quarterly bill which Mr. Vidrine received from Travelers requested that he notify his local agent when he became eligible for Medicare.
In April 1984 Mr. Vidrine was hospitalized in the Humana Hospital in Ville Platte, La. In connection therewith he incurred medical expenses totalling $4,370.10. These expenses were submitted to Travelers for payment, along with information indicating that Medicare had paid $3,682.32 of the expenses. This was Travelers first notice that Mr. Vidrine was eligible for Medicare benefits. Travelers declined payment on the balance of the bills due.
The plaintiff made demand upon the defendant and the defendant again refused to pay the claim alleging that the Medicare exclusion coupled with the $2,000.00 deductible exonerated the defendant from coverage on his claim.
Suit was filed on August 14, 1984, with plaintiff seeking to recover $4,370.10 under the policy, as well as penalties and attorney's fees, alleging that the defendants had been arbitrary and capricious in refusing to honor plaintiff's claim.
The defendant answered alleging that the terms, conditions and exclusions contained in the policy precluded the plaintiff from recovering benefits as the deductible thereunder had not been satisfied by the plaintiff.
The case proceeded to trial where plaintiff testified that he had originally purchased the policy with a $200.00 deductible, but because the premiums of that policy were too expensive he changed over to a policy which was identical in every way except that it provided for a $2,000.00 deductible. The plaintiff further testified that although he purchased the two separate policies from Travelers he never received a certificate of insurance from Travelers. Mr. Vidrine did however state that he received through the mail identification cards recognizing him as a policyholder and his quarterly premium notices.
By way of rebutting the plaintiff's allegation that he did not receive certificates of insurance for his policies the defendant called James D. Vidrine, the Farm Bureau Agent; Peggy Alexander, Travelers Assistant Service Representative responsible for administering the Farm Bureau policies; and Phil E. Ezel, Travelers's Group Claims Manager. Mr. James Vidrine testified that it is his standard policy to provide his clients who apply for insurance with a pamphlet which explains the coverage which they are purchasing. However, he did not remember if he had given the plaintiff a copy of the pamphlet. Mr. James Vidrine did state that it is also his practice to discuss each detail of the policy with the insurance applicant.
Ms. Alexander testified that when an application for insurance by a Louisiana Farm Bureau member is approved, it is general standard procedure to mail that party a kit which contains a certificate booklet (which includes a certificate of insurance as well as the policy provisions), identification cards and claim forms. Ms. Alexander further testified that Travelers does not mail the ID cards without the kit nor do they mail ID cards alone. Ms. Alexander also stated that in July of 1983 Travelers modified the Farm Bureau group plan to provide for three alternative plans with three alternative deductibles which the Farm Bureau member policyholder could chose from. Standard procedure required new kits with a certificate booklet, ID cards and claim forms to be mailed to all policyholders who were on the January 1, 1984 billing list so as to certify those members with a new policy deductible. A copy of the January 1, 1984 billing list including the plaintiff's name and address was entered into evidence.
The defendants aver that the plaintiff should have received two certificates of insurance, one for the policy with the $200.00 deductible, and a second certificate *308 when he changed the policy to a $2,000.00 deductible.
The defendants also offered evidence which showed that the quarterly premium notice which was mailed to policyholders contained language requesting that the policyholder notify the Farm Bureau Agent if he became eligible for Medicare. Evidence was also adduced that when a policyholder became eligible for Medicare benefits his premiums would be reduced.
During cross examination of defendant's witnesses, the plaintiff elicited testimony that the policy did not tell a policyholder what action he should take in the event he became eligible for Medicare during the policy period.
At the conclusion of the trial the district judge found in favor of the plaintiff holding that the terms and exclusions of the policy did not apply. In his oral reasons for judgment, which were transcribed into the record, the district judge stated:
"The Court is prepared to rule. The Court will find coverage without penalties and attorney fees for 80% of an excess of $2,000. This man was paying the premium. He's obviously uneducated. Even the agents werethe agents that talked about the policy didn't go throughthey knew him well, they should have been more careful in explaining to him everything. It's admitted that if he would not have had the coverage of medicare he would have gotten his benefits under the policy. We have to take into consideration the policy holder, what he understands, his ability. What he says, and the Court believes is, he gets a bill, doesn't know what to do with it, goes to the Farm Bureau, give em the money and they'd pay it. He obviously would haveI know Mr. Vidrine. If he could have saved $40.00 off of his premium every three months, he would have saved it. He was very price oriented when he got thing change caused he couldn't afford the high premium. His real thing would have been to get a supplemental policy to medicare. This policy seems expensive to be a supplemental to medicare. Therefore, the Court will hold that the company is responsible for 80% of the excess of $2,000, costs of the proceedings to be assessed against the company. But I can understand that they are acting under the presumption that he had medicare coverage when the claim was made."
The judgment of the district court ordered the defendant to pay $1,896.08 with legal interest thereon from the date of judicial demand.
The defendant appeals the decision of the district court alleging that the district court erred by ruling that the plaintiff was entitled to recover under the terms of the policy. The plaintiff answered the appeal averring that the district court should have awarded penalties and attorney's fees inasmuch as the defendant was arbitrary and capricious in view of its failure to pay on the policy.
We find that the defendant-appellant's contentions have merit and reverse the district court. La.R.S. 22:215 provides in part that an insurer issuing a group health and accident insurance policy to an association must issue to the association for delivery to the insured member of the association "an individual certificate containing a statement as to the insurance protection to which he is entitled and to whom payable." The jurisprudence has interpreted the purpose of this statutory requirement to be the assurance that every insured member is made aware of the available benefits and the applicable limitations of the group insurance plan without requiring the insurance company or the policy holder to provide each and every member with a copy of the policy. Leonard, Tutrix of Bland v. Continental Assurance Company, 457 So.2d 751 (La.App. 1st Cir.1984).
Generally, if a certificate of insurance containing a statement notifying the insured member of the benefits, limitations, exclusions, and deductions is not delivered to the insured member as required by La. R.S. 22:215, the member is relieved from complying with the limitations, exclusions *309 and deductions contained in the policy. See Romano v. Pilot Life Insurance Company, 428 So.2d 523 (La.App. 3rd Cir.1983), and Lombard v. Manchester Life Insurance Company, 406 So.2d 742 (La.App. 4th Cir.1981).
However, a member who claims that he has not received delivery of a certificate of insurance has the burden of proving nondelivery and is required to establish by a preponderance of the evidence every fact necessary to establish coverage under the policy. Daigle v. Travelers Insurance Company, 421 So.2d 302 (La.App. 1st Cir. 1982).
In the instant case the only evidence of nondelivery of the certificate of insurance are the allegations of the plaintiff. We find that those allegations are insufficient to prove nondelivery in view of the substantial evidence put forth by plaintiff that delivery of the certificate was effected. See Leonard, Tutrix of Bland, supra.
It is a well settled legal principle that a valid insurance policy is a contract between the insured and the insurer, and as is true of all other contracts, it is the law between them. Where the language of the policy is free and clear of ambiguity, it constitutes the contract between the parties and must be enforced as written. In addition, insurers have the same rights as individuals to limit their liability and to impose whatever conditions they please upon their obligations under the policy in the absence of conflict with laws or public policy. Cataldie v. Louisiana Health Service & Indemnity Company, 433 So.2d 367 (La.App. 3rd Cir.1983), and Hall v. National Life & Accident Insurance Company, 383 So.2d 74 (La.App. 3rd Cir.1980).
Here, the above quoted exclusion from coverage for benefits payable under Medicare is clear and unambiguous. This particular policy had a $2,000.00 deductible per calendar year. The total amount of the plaintiff's medical expenses were $4,370.10. Under the terms of the policy exclusion Travelers would first determine the amount the policy would normally pay if Medicare was not a factor, this would be effected by subtracting the $2,000.00 deductible from the total expenses leaving a balance of $2,370.10. Under the terms of the policy Travelers would have paid 80% of this amount, or $1,896.08. Then the amount payable under Medicare for the same expenses would be subtracted from the amount Travelers would have normally paid. Medicare paid a total of $3,691.32. Therefore that amount paid by Medicare, $3,691.32 would be subtracted from $1,896.08, the amount this policy would normally have paid, leaving a negative balance. Therefore, under the explicit terms of the policy there were no benefits due under the policy to the plaintiff-appellee.
The district judge impliedly recognized that this exclusion would have applied to the plaintiff but for the plaintiff's lack of understanding of the terms of the policy. Unfortunately, because this policy exclusion is so clear and free of ambiguity we are constrained from considering the plaintiff's lack of education and sophistication and must enforce the policy as written.
We therefore reverse the decision of the district court and hold that under the provisions of this policy the plaintiff is not entitled to coverage for the claimed expenses.
Inasmuch as we here find that the policy does not afford coverage for the plaintiff's claim we need not consider plaintiff-appellee's demand for penalties and attorney's fees.
For the above and foregoing reasons the decision of the district court is reversed. All costs to be assessed against plaintiff-appellee.
REVERSED.
NOTES
[*] Judge Robert P. Jackson of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.