LABORDE, Judge.
This is an action on a credit life insurance policy. Plaintiff, May Company, Inc., seeks to recover the proceeds on a policy issued by defendant, Riverside Life Insurance Company (Riverside). The policy was issued on the life of Shirley Ballio with Henry Companies, the operating name of May Company, being designated as the first beneficiary/creditor. The defendant filed exceptions of lack of subject matter jurisdiction, non-joinder of a indispensable party and non-joinder of a necessary party, all of which were dismissed. The trial judge awarded judgment against Riverside for the face amount of the policy, together with penalties pursuant to LSA-R.S. 22:656. The defendant now brings this appeal. We reverse the trial court’s decision and also award defendant the $657.00 witness fee for its expert witness.
FACTS
On September 7, 1985, Shirley Ballio signed a credit life insurance application/certificate in the offices of Henry Companies in Natchitoches, Louisiana. The defendant, Riverside, was the underwriter on the policy, while the plaintiff, the May Company, Inc., (operating as the Henry Companies) was the defendant’s agent for the exclusive purpose of soliciting life insurance business in connection with the loans it made to third parties. Under the terms of the policy, Ms. Ballio’s life was insured for the amount of $9,730.80. The policy designated the Henry Companies as the first beneficiary/creditor. The debt upon which the insurance was written was a default judgment, rendered in favor of the Henry Insurance Agency, Inc., on certain loans made to Ms. Ballio. The default judgment was entered on February 28, 1984.
Shirley Ballio died on April 25, 1987. On May 22, 1987, plaintiff filed a claim with the defendant insurer to recover the proceeds of the credit life insurance policy. Apparently, the defendant formally refused to pay the claim on July 27, 1987. The plaintiff filed this action on the same day.
Defendant raises several issues on appeal; however, we find it necessary to address only one of them.
THE PRE-EXISTING CONDITION CLAUSE
The defendant contends that the trial court committed error in its determination that the pre-existing condition clause in its policy was not legally enforceable. It is undisputed that both the “Master Policy” and the insured’s copy of the certificate of insurance contain the same pre-existing condition clause. The “Master Policy” has certain enumerated provisions, one of which reads:
“PRE-EXISTING CONDITION: any sickness the Debtor had during the one year period before the certificate went into effect is not covered during the first two years of coverage. These are conditions for which medical advice or treatment was given or distinct symptoms evident.”
Additionally, the insured’s copy of the certificate of insurance states in bold, black lettering:
“PRE-EXISTING CONDITIONS AS DEFINED ON REVERSE SIDE OF INSUREDS COPY, ARE NOT COVERED.”
On its reverse side, the certificate states that the “Master Policy” constitutes the contract between the parties, and goes on *330 to reiterate the pre-existing condition clause of the “Master Policy.”[1]
Defendant maintains that since Ms. Ballio died of a pre-existing condition, the plaintiff should be precluded from receiving any benefits under the policy. The record in this case reveals that Ms. Ballio had a history of polycystic liver and kidney disease. According to the defendant’s expert witness, Dr. Michael S. Rohr, polycystic liver and kidney disease is an inherited condition that affects the liver and kidneys and which results in failure of those organs, on average, in the third or fourth decade of the patient’s life. Ms. Ballio’s family history indicates that her mother died of the disease at age 36 and her sister died of it at age 40.
On November 24, 1984, Ms. Ballio was admitted to Huckabay Memorial Hospital in Coushatta, Louisiana for renal failure secondary to polycystic kidney disease. She received treatment and was transferred to LSU Medical Center in Shreveport on November 29, 1984, for review of her case for possible candidacy of transplant or dialysis. At LSU, she received testing and treatment until December 3, 1984, when, against her doctor’s advice, she left the hospital. Ms. Ballio never returned to LSU for the necessary follow-up treatment. After entering into the insurance agreement, she received treatment for complications of the disease on several different occasions. Shirley Ballio died on April 25, 1987. The Certificate of Death lists the cause of death to be cardiopulmonary arrest arising out of adult polycystic multi-organ involvement. Dr. Rohr testified that he agreed with the determination that Ms. Ballio died of poly-cystic liver and kidney disease.
It is well-established in Louisiana jurisprudence that an insurer has a strict burden to prove the applicability of an exclusionary clause. Dear v. Blue Cross of Louisiana, 511 So.2d 73 (La.App.3d 1987); Moncrief v. Blue Cross-Blue Shield of Arkansas, 472 So.2d 299 (La.App.3d Cir. 1985). From the medical evidence presented, we are convinced that the defendant has met its burden of proving that Ms. Ballio died of a pre-existing condition and that her death triggered the pre-existing condition clause of defendant's policy. She was diagnosed and treated for a condition within one year of the issuance of the certificate of insurance, and she died of that condition within two years of the execution of said certificate.
After having determined that the pre-existing condition clause is applicable, we now must turn our attention to the issue of whether it is enforceable in this case. We hold that it is. We begin by noting that in the absence of a conflict with statutes or with public policy, insurers have the same rights as do individuals to limit their liability and to enforce whatever conditions they please upon their obligations. Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190 (La.1974); McKenzie and Johnson, Louisiana Civil Law Treatise: Insurance Law and Practice § 4 (1986). In such an event, unambiguous provisions in the insurance contract limiting liability must be given effect. Oceanonics, supra; Niles v. American Bankers Insurance Co., 258 So.2d 705 (La.App.3d Cir.1972). Accordingly, pre-existing condition clauses have been routinely upheld by the courts of this state. Union Bank v. Francisco, 511 So.2d 45 (La.App. 3d Cir.), writ denied, 513 So.2d 825 (La.1987); Landry v. Travelers Insurance Co., 488 So.2d 379 (La.App. 3d Cir.), writ denied, 491 So.2d 23 (La.1986); Remondet v. Reserve National Insurance Co., 433 So.2d 792 (La.App. 5th Cir.), writ denied, 441 So.2d 216 (La.1983).
After a thorough review of the record, we can find no reason why the pre-existing condition clause in this case should not be enforced. The clause appears in bold lettering and in clear and unambiguous language in the “Master Policy” and in the certificate of insurance, *331 which the decedent signed.[2] It is axiomatic that an insurance policy is the contract between the parties, and as with all other contracts, it is the law between the parties. Glass Services Unlimited v. Modular Quarters, Inc., 478 So.2d 1005 (La.App. 3d Cir.1985); Schmieder v. State Farm Fire and Casualty Co., 339 So.2d 390 (La.App. 4th Cir.1976), writ denied, 341 So.2d 895 (La.1977). Even though there was testimony at trial to the effect that Ms. Ballio was a relatively uneducated woman, there is no evidence whatsoever that she lacked the capacity to contract. Thus, since Ms. Bal-lio contracted for the insurance and since she signed the certificate of insurance, we find that she was bound by any lawful provisions of the policy, including the preexisting condition clause.[3]
The plaintiffs argument that the pre-existing condition clause should be considered unenforceable is based primarily on the fact that Ms. Ballio was not required to fill out any health forms, nor was she asked any health-related questions before she signed the certificate. We disagree. The Louisiana Supreme Court in Estate of Borer v. Louisiana Health Service & Indemnity Co., 398 So.2d 1124, 1126 (La. 1981) in differentiating the misrepresentation defense from the pre-existing condition defense, stated that:
“The so-called preexisting condition defense, unlike the misrepresentation defense is a question of contract interpretation. The availability of the defense is not dependent upon statements made by the insured in the application; the question is whether the policy excludes coverage for preexisting conditions.”
Also, in Murray v. Reserve Life Insurance Co., 467 So.2d 55 (La.App. 4th Cir.), writ denied, 472 So.2d 916 (La.1985), our brethren in the Fourth Circuit, relying on Borer, determined that the representations made on a life insurance application have no bearing on the enforceability of a pre-exist-ing condition clause. Even though these cases involved general life insurance policies, we find them to be equally applicable to credit life policies. We therefore hold that the absence of inquiries into the health of an insured before he signs a credit life insurance certificate does not preclude the insurer from later relying on a pre-existing condition clause to exclude coverage for pre-existing conditions.
The plaintiff relies on three cases for its argument that the pre-existing condition clause is unenforceable: Flaherty v. Gulfco Life Insurance Co., 327 So.2d 436 (La. App. 3d Cir.), writ denied, 329 So.2d 430 (La.1976); Brasher v. Life Insurance Co. of Louisiana, 306 So.2d 321 (La.App. 3d Cir.), writ denied, 310 So.2d 639 (La.1975); Key v. Cherokee Credit Life Insurance Co., 298 So.2d 892 (La.App. 3d Cir.1974). We find these cases to be inapposite, as they involve the “sound health” provision of credit life policies and not the pre-exist-ing condition clause of such policies.
DECREE
For the foregoing reasons, we reverse the decision of the trial court and render judgment herein in favor of Riverside Life Insurance Company and against the May Company, Inc. We also award Riverside the $657.00 witness fee of Dr. Rohr pursu *332 ant to LSA-R.S. 13:3666. The May Company is cast for all costs.
REVERSED AND RENDERED.
DOMENGEAUX, J., concurs in the result.

. We note that, inexplicably, the reverse side of the certificate was not provided in the record. Since the contents of the reverse side are not in *331 dispute, we are convinced that its absence is of no consequence to this opinion.

. A party who signs a written instrument is presumed to know its contents. Albright v. Prentice, 425 So.2d 336 (La.App. 3d Cir.), writ denied, 430 So.2d 84 (La.1983); Stams v. Ducote, 254 So.2d 301 (La.App. 3d Cir.1971).

. In his opinion, the trial judge points out that the insured never received a copy of the "Master Policy” or the application i.e., the certificate of insurance. We are aware of no law which requires that a copy of the "Master Policy” be furnished to the insured. As for the certificate, LSA-R.S. 22:176 requires that the policy contain language to the effect that a certificate will be provided to the insured. Nevertheless, at trial, the plaintiffs agent conceded that he was not sure whether Ms. Ballio received a certificate or not. Therefore, we find that the plaintiff failed to meet its burden of proving nondelivery of the certificate. See Vidrine v. Travelers Insurance Co., 488 So.2d 305 (La.App. 3d Cir. 1986); Daigle v. Travelers Insurance Co., 421 So.2d 302 (La. App. 1st Cir. 1982).