614 So.2d 154 (1993)
Judy Dauzat GUNN, Plaintiff-Appellee,
v.
AUTOMOTIVE CASUALTY INSURANCE CO., et al., Defendants-Appellants.
No. 91-1195.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1993.
*155 Gist, Methvin, Hughes & Munsterman, George C. Gaiennie, III, Alexandria, for defendant-appellant Automotive Cas.
John T. Bennett, Marksville, for plaintiff-appellee.
Eugene J. Sues, Alexandria, for defendant-appellee Allstate.
Before GUIDRY, STOKER and COOKS, JJ.
GUIDRY, Judge.
This case arises from a vehicular collision which occurred in Marksville, Louisiana, between a pickup truck owned and operated by plaintiff, Judy Gunn, and a motorcycle owned by Steven Frith and operated, with his permission, by defendant, Iris Wooton. The trial court rendered summary judgment in favor of Gunn on the issue of coverage, finding that an automobile liability insurance policy issued by Automotive Casualty Insurance Company (Automotive) to Wooton on her 1975 Pontiac Trans-Am provided coverage for her operation of the non-owned motorcycle. Automotive appeals. We reverse.
FACTS AND PROCEDURAL HISTORY
The accident occurred on September 18, 1990. Gunn sued Wooton, Automotive, and her uninsured motorist carrier, Allstate Insurance Company (Allstate). Allstate then filed a cross-claim against Wooton and Automotive. Gunn subsequently settled her claim against Allstate, dismissed Wooton as a defendant, and proceeded against Automotive. As a result of the compromise, Allstate dismissed its cross-claim. The Automotive policy provides a $10,000 per person bodily injury limit.
Automotive filed a motion for summary judgment on the basis that its policy specifically excluded liability coverage for the *156 ownership, maintenance, or use of any motorized vehicle having less than four wheels. Gunn also filed a motion for summary judgment and opposed Automotive's motion on the basis that the policy language was ambiguous and should be construed against Automotive and in favor of coverage.
The material facts of this case are not in dispute. The only issue is which party is entitled to judgment, as a matter of law, on the issue of coverage. The trial court dismissed Automotive's motion for summary judgment and granted Gunn's motion for summary judgment, finding that Automotive's policy provided coverage for Wooton's operation of the Frith motorcycle.[1]
In support of its conclusion, the trial court relied on La.R.S. 32:861 et seq., the Compulsory Motor Vehicle Liability Security Law, which requires every motor vehicle registered in Louisiana to be covered by a policy of liability insurance. The court reasoned that, because a motorcycle is included within the definition of "motor vehicle" in La.R.S. 32:1(40), an attempt to exclude it from coverage under the Automotive policy was contra bonos mores, i.e., against public policy. Judgment was rendered awarding Gunn $10,000 plus interest.
Automotive appealed and assigns as error the trial court's failure to apply the exclusionary language of the policy, and its resultant holding that Automotive insured Wooton for the operation of Frith's motorcycle. In brief, Gunn urges error in the trial court's failure to hold that the insurance contract was ambiguous.

OPINION
Automotive contends that the trial court should have applied the following policy exclusion to deny coverage:
PART ALIABILITY COVERAGE
* * * * * *
EXCLUSIONS
* * * * * *
B. We do not provide Liability Coverage for the ownership, maintenance, or use of: (1) Any motorized vehicle having less than four wheels.
* * * * * *
Automotive agreed to pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. The following pertinent definitions are applicable to the entire policy:
(a) "auto" is a 4-wheel motor vehicle licensed for use on public roads. It includes any motor home that isn't used for business purposes and any utility trailer;
(b) "motor vehicle" is a land motor vehicle designed for use on public roads. It includes cars and trailers. It also includes any other land motor vehicle while used on public roads;
(c) "auto accident" is an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance, or use of an auto or other motor vehicle;
(d) "your covered auto" means:
(1) Any vehicle shown in the Declarations
* * * * * *
(4) Any auto you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its: breakdown, repair, servicing, loss, or destruction.
(5) We insure other cars you use with the permission of the owner, but not for collision or comprehensive insurance. We don't insure other cars owned by, or furnished, for the regular use of, you or resident members of your family.
*157 In addition, "covered person" as specifically used in the liability coverage portion of the policy, is defined in pertinent part as:
(1) You or any family member for the ownership, maintenance, or use of any auto or trailer;
(2) Any person using your covered auto;
* * * * * *
The law applicable to the interpretation of insurance contracts is well settled. The judicial responsibility is to determine the common intent of the parties. In the absence of a conflict with statutes or public policy, insurers have the same rights as do individuals to limit their liability and to enforce whatever conditions they please upon their obligations. Hearty v. Harris, 574 So.2d 1234 (La.1991); May Company, Inc. v. Riverside Life Insurance Company, 546 So.2d 328 (La.App. 3rd Cir.1989). "Such limitations or exclusions ... must be free of ambiguity and sufficiently understandable to any given insured that it may be said that, in entering into the agreement containing such limitation, he understood and consented to such limitation". Percy v. Safeguard Insurance Company, 460 So.2d 724, 727 (La.App. 3rd Cir.1984), writ granted, 463 So.2d 596 (La.1985), cause dismissed, 464 So.2d 1366 (La.1985). Exclusionary provisions in insurance contracts are construed against the insurer, and any ambiguity is construed in favor of the insured. If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991). However, a clear and unambiguous provision in the insurance contract limiting liability must be given effect. Foret v. Louisiana Farm Bureau Casualty Insurance Company, 582 So.2d 989 (La. App. 1st Cir.1991); May Company, Inc., supra.
Applying these principles, we conclude that, while the trial court correctly determined that the policy provisions and the exclusion at issue were not ambiguous, it erred in holding that the exclusion was void as against public policy. The exclusion, drafted in plain language, is clear and unambiguous such that any insured can easily determine that the policy does not provide liability coverage for damages arising out of the use of a motorcycle, a "motorized vehicle having less than four wheels". Additionally, under the clear terms of the policy, the motorcycle does not otherwise qualify as "your covered auto" under any of its listed definitions. Likewise, Wooton does not qualify as a "covered person" under the facts of this case.
The trial court's reliance upon La.R.S. 32:861 in holding the exclusion against public policy is misplaced. That statute indeed requires that every motor vehicle registered in this state be covered by an automobile liability policy. However, La.R.S. 32:861(A)(2) provides that "It shall be the duty of the registered owner of a motor vehicle to maintain the security hereinabove required". (Emphasis ours.) Frith, as registered owner of the motorcycle, was responsible for maintaining insurance coverage on the motorcycle, and, as such, was the only person who could violate the statute. Cf. La. Farm Bureau Casualty Insurance Company v. Darjean, 554 So.2d 1376 (La.App. 1st Cir.1990), writ denied, 558 So.2d 571 (La.1990); and, see Hearty v. Harris, supra.
The public policy requiring insurance on all automobiles and motor vehicles registered in Louisiana is a commendable one. However, to conclude that Automotive violated that public policy by contractually excluding liability resulting from the maintenance or use of a non-owned motorized vehicle with less than four wheels is an erroneous application of the statute to an entity, Automotive, against which the statute was never intended to apply. The onus was upon the registered owner (Frith) to acquire and maintain minimum liability coverage as outlined in La.R.S. 32:900(B)(2). It is not the responsibility of an insurer to provide blanket coverage for all non-owned motor vehicles that the insured may conceivably drive during the term of the policy. Clearly, the insurer can reasonably limit the type or classification of non-owned motor vehicles which are covered under the policy without violating this statute, the *158 public policy embodied therein, or any other public policy. We conclude that the Automotive policy issued to Wooton did not provide liability coverage for her operation of Frith's motorcycle. The trial court's decision to the contrary is clear error.
For the above and foregoing reasons, the trial court's judgment is reversed and set aside and judgment is rendered sustaining the motion for summary judgment filed by Automotive Casualty Insurance Company. Accordingly, plaintiff's demands against Automotive are ordered dismissed with prejudice and at her cost, both at the trial level and on appeal.
REVERSED AND RENDERED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
The majority opinion reaches the correct result in this case through a strict construction of statutory provisions of law. I agree with this analysis. Beyond strict construction, it seems to me that no offense to public policy may be shown by reference to the theory and approach embodied in the Louisiana Motor Vehicle Safety Responsibility Law, LSA-R.S. 32:851, et seq., and particularly in the Compulsory Motor Vehicle Liability Security portion thereof, LSA-R.S. 32:861-864.
In Hearty v. Harris, 574 So.2d 1234 at 1237 (La.1991), the Louisiana Supreme Court said:
"The Louisiana Motor Vehicle Safety Responsibility Law (LMVSRL) provides a mandatory, comprehensive scheme for the protection of the public from damage caused by motor vehicles. At the heart of this statutory scheme is the decision to attach the financial protection to the vehicle rather than to the operator.8"
(Footnote seven omitted.)
* * * * * *
"8 Pursuant to the LMVSRL, owners of motor vehicles registered in Louisiana are prospectively required to maintain proof of financial responsibility by one of four methods provided in La.R.S. 32:861(A). The LMVSRL requires individual operators of a [sic] motor vehicles to provide proof of financial responsibility only if a judgment arising from a previous motor vehicle accident in which they were found liable has not been satisfied or if they have been convicted of violating one of the major traffic laws. La.R.S. 32:871, et seq."
LSA-R.S. 32:862 provides in paragraphs A, C and D of that section:
"§ 862 Proof of compliance
"A. As used in this Section, the phrase "proof of compliance" means proof of compliance with the requirements of the Motor Vehicle Safety Responsibility Law, R.S. 32:851 et seq., and the rules adopted under that law.
* * * * * *
"C. Each person who applies for the registration of a motor vehicle, or who applies for the renewal of a registration of a motor vehicle, or who applies for a motor vehicle inspection certificate shall provide proof of compliance and shall declare in writing that the applicant will remain in compliance during the time for which the registration, the renewal of registration, or the certificate is issued.
"D. Each adult person who applies for a driver's license shall:
"(1) Provide proof of compliance and declare in writing that the applicant will remain in compliance during the time for which the license is issued; or
"(2) Declare in writing that the applicant does not own a motor vehicle which is currently registered or licensed in this state or any other state or in any territory."
This means that, while operators of motor vehicles in this State are required to have been issued a driver's license, they are not required to carry automobile insurance or furnish proof of financial responsibility on automobiles they do not own. Consequently, when Iris Wooton operated Steven Frith's motorcycle, she was not required to have any motor vehicle insurance at all. Therefore, Automotive Casualty Insurance Company (Automotive) was not required to issue the policy in favor of Iris *159 Wooton in compliance with LSA-R.S. 32:861A(1) insofar as it covered the use of nonowned motor vehicles. Under the circumstances, Automotive could, as it did, insure Wooton's liability resulting from use of any motor vehicle she did not own with any restrictions it wished. In fact, it could have issued a policy excluding coverage for liability resulting from use of any nonowned motor vehicle.
For these reasons, I do not believe that the exclusion of coverage with respect to nonowned motorized vehicles having less than four wheels offends the public policy of this State.
NOTES
[1] In his written reasons for judgment, the trial judge erroneously stated that Automotive "... issued a policy of insurance covering the automobile of a Mr. Steven Frith". On the contrary, Automotive issued the policy in question to Wooton covering her automobile. The record is devoid of any mention of liability coverage obtained on the motorcycle by its registered owner, Frith.