ESTATE OF BEILKE; ARYMAN, Claimant, Appellant, vs.
ESTATE OF BEILKE, Respondent.

*February 5—March 3, 1953.*

For the appellant there was a brief by *Gorman & Gorman* of Wausau, and oral argument by *E. P. Gorman*.

For the respondent there was a brief and oral argument by *Wayne W. Schlosser* of Wausau.

BROADFOOT, J. The claimant married one Marvin B. Beilke, a son of the deceased, in 1922. Marvin Beilke died in 1934 and claimant remained a widow until 1940, when

she married Charles Aryman. After her second marriage she and her husband leased and operated the West Side hotel, located at 105 Clark street, Wausau, Wisconsin. Her husband operated the hotel and a tavern therein, and the claimant operated the restaurant in the hotel as her separate business.

From 1940 until the time of his death on October 19, 1951, Henry A. Beilke lived at 115 Clark street, two doors from the hotel. His wife died on September 15, 1944, and soon after that date Henry A. Beilke began to take his noonday meal at the restaurant of the claimant. No record was kept by the claimant of the number of meals taken by Mr. Beilke, but she estimated that during the period within the statute of limitations, and after October 19, 1945, she had furnished him 1,390 meals valued at 65 cents each. The claimant discontinued the restaurant business on June 20, 1950.

After eating his noonday meal, Mr. Beilke went to the kitchen where he scraped the food remaining on the plates into a container, which he took to his home and used as feed for his chickens, and also helped wash the dishes in the kitchen while waiting for the patrons of the restaurant to finish their meals.

The record further discloses that Mr. Beilke raised a garden and took some of the vegetables he raised to the restaurant. He loaned money to the claimant at different times, which was always repaid to him with interest. Claimant did not ask Mr. Beilke during his lifetime to pay for the meals, and there is no evidence that she ever paid him for the vegetables he furnished. When the hotel was crowded some of the members of the Aryman family were accustomed to sleeping at the home of Mr. Beilke. The deceased had an excellent reputation for paying his bills, and he had sufficient means to pay any bills presented to him.

Objection was filed to the claim by the administrator, who contended that the claimant was a relative of the deceased

and the presumption is that the serving of the meals was gratuitous. Several cases citing the rule as between relatives were noted in the briefs. They are too well established to require a restatement or comment. The trial court, in its memorandum opinion, thought that the relative rule was applicable. Had he decided the case upon that ground we would have disagreed with him. Under the facts in this case we do not think that rule would apply.

On the other hand, the claimant contended that the facts established an implied contract to pay for the meals. There is no direct testimony in the record that the claimant intended to charge Mr. Beilke for the meals. The only direct testimony in the record that Mr. Beilke had any intention to pay for them is the following statement attributed to him by an employee of the claimant. She testified:

"He [Mr. Beilke] thought it was nice of them that' he was getting his meals there. He said that someday he would make it right with Mrs. Aryman."

The rule in such cases is best illustrated by the following language by Mr. Justice WICKHEM in *Estate of St. Germain*, 246 Wis. 409, 411, 17 N. W. (2d) 582:

"Claimant's first assertion is that where services are requested by the person for whom they are rendered, or the benefits accepted voluntarily by such person, there is an implied promise on his part to make reasonable compensation therefor, if no express contract has been made, if the services are such as are ordinarily paid for, and if the party rendering them was not bound to render them without compensation. *National Film Service v. Industrial Comm.* 206 Wis. 12, 238 N. W. 904. See also *Winter v. Greiling,* 114 Wis. 378, 90 N. W. 425. While the rule asserted by claimant is set forth generally in the terms above indicated, it is more precisely set forth in relation to the facts here in two other cases. *In re Estate of Happel-Bossi,* 133 Wis. 119, 123, 113 N. W. 433, and *Wojahn v. National Union Bank,* 144

Wis. 646, 129 N. W. 1068. In *In re Estate of Happel-Bossi, supra,* the court points out that in a claim on *quantum meruit* for services rendered a decedent 'all that was necessary for claimant to prove in order to make out a *prima facie* case was the performance of the services and their value.' All that this case holds is that the claimant may recover upon such a showing if the evidence is believed.

"In the *Wojahn Case, supra,* it is said (p. 667) :

" 'The general rule is that if a person performs valuable services for another at that other's request, the law implies, as matter of fact, the making of a promise by the latter and acceptance thereof by the former to pay the one performing the service the reasonable value thereof. . . . If one merely accepts services from another which are valuable to him, in general, the presumption of fact arises that a compensation equivalent is to pass between the parties, and the burden of proof is upon the recipient of the service to rebut such presumption if he would escape from rendering such equivalent.'

"Here the court refers to such evidence as raising a presumption of fact which is merely an inference sufficient to establish liability but subject to being rebutted or repelled by other evidence.

"We shall not unduly extend this opinion by further considering the nature of this presumption, because it makes no difference whether it be considered as an artificial rebuttable presumption or a mere inference of fact. In any event, we are faced with a question whether the evidence relied on by the trial court is sufficient either to rebut the presumption, if it is a presumption, or to repel the inference, if it is an inference."

In this case the trial court made but one finding of fact, which was as follows:

"1. That obviously there never was an express or implied agreement by the deceased to pay for the meals he received and no demand for payment was made by the claimant during the time she operated her restaurant or thereafter until the decedent's death."

Was that finding against the great weight and clear preponderance of the evidence? That is the only question to be

determined. We are convinced that the finding is not against the great weight and clear preponderance of the evidence, but on the contrary it is supported by the record. Claimant kept no record of the meals furnished, she made no demand for payment therefor, she borrowed and repaid money without withholding the value of the meals, and these facts militate against any implication that she intended to make a charge therefor. The record, on the contrary, reveals a pleasing example of mutual kindness, and the trial court was warranted in concluding that the meals were not furnished with the expectation of being paid for. Mr. Beilke's statement that someday he would make it right with Mrs. Aryman could well mean that he would do additional favors for her, but the statement of itself does not prove an intent to pay for the meals in cash.

*By the Court.*—Judgment affirmed.