STACK CONSTRUCTION COMPANY, Respondent, v. CHENEN-OFF and another, Appellants.

*September 8—October 5, 1965.*

284

"  . . .

For the appellants there was a brief by *Love, Davis, Mc-Graw, Huber & Brown* of Waukesha, and oral argument by *Robert T. McGraw.*

For the respondent there was a brief by *Grootemaat, Cook & Franke,* attorneys, and *Robert E. Cook* and *Thomas J. Drought* of counsel, all of Milwaukee, and oral argument by *Robert E. Cook.*

GORDON, J.   The testimony establishes with clarity the fact that the fill which under the contract was to be "loaded and trucked from site at extra of $0.80 per yard" was not actually loaded or carried away.   This phase of the work was simply not performed.   The trial court recognized this fact but nevertheless concluded that the plaintiff "should not be penalized" because of it.

The record establishes that more than 107,000 cubic yards were actually cut by the plaintiff, and it is entitled to compen-

sation for such work. However, we are unable to accept the trial court's conclusion that such additional work should be paid for at the premium price of $0.80 per cubic yard. The nature of such additional work was clearly not comparable to that for which the contract price was established in the sum of $0.80 per cubic yard.

The written contract, which arose when Mr. Chenenoff on December 19, 1961, accepted the plaintiff's bid based on the November plan, was never formally altered. While there was a new site-grading plan dated December 8, 1961, the record establishes that it was not adopted by the parties, and, thus, the new plan cannot be construed as representing a modification of the original contract.

The original contract is not ambiguous in its terms, and it is the court's duty to construe it as it stands. *George J. Meyer Mfg. Co. v. Howard Brass & Copper Co.* (1945), 246 Wis. 558, 574, 18 N. W. (2d) 468. Nevertheless, the plaintiff did not perform all the work called for under the contract, and this appears to have been acceptable to the defendant. Under such circumstances, there is no sound basis for granting recovery to the plaintiff for work it did not perform at rates which contemplated special duties which never materialized.

There were, however, added services which were not expressly provided for in the contract but were nevertheless performed by the plaintiff and for which the defendant should reasonably have recognized his obligation to pay. *Fieldhouse Landscape v. Gentile* (1961), 12 Wis. (2d) 418, 107 N. W. (2d) 491; *Estate of Beilke* (1953), 263 Wis. 372, 57 N. W. (2d) 402; *Estate of St. Germain* (1945), 246 Wis. 409, 17 N. W. (2d) 582; *Wojahn v. National Union Bank* (1911), 144 Wis. 646, 129 N. W. 1068.

It is undisputed that 107,000 cubic yards should be paid for at the contract price of $0.31 per cubic yard. However, Stack claims that it moved approximately 155,000 cubic

yards of dirt as of June 18, 1962, as reflected in the following testimony of its president, Mr. Stahoski:

"*Q*. And how did you arrive at this number of 155,000 cubic yards?

"*A*. By our original calculations that we had based on November 27th, which was 107, plus 20, which is 127,000 yards, which had to be moved and—it was left on the site; and we moved another 23,000 yards between the sidewalk— between the property line and the curbing, and we moved about 5,000 cubic yards of topsoil, which amounts to 155,-000."

Based on the above figures, it would appear that there remain 48,000 cubic yards of dirt for which there must be an accounting. Mr. Chenenoff claims that of these remaining cubic yards, 28,000 cubic yards were the result of two extra contracts entered into in May, 1962, for which he paid Stack the sum of $7,704.75.

Mr. Chenenoff also refers to the testimony of Stack's foreman, Mr. Banaszak, to the effect that the major difference between the actual work done (155,000 cubic yards) and the November plan (128,000 cubic yards) was a result of the two extra contracts entered into in May, 1962. However, the record is not completely clear that 28,000 of the 48,000 cubic yards were represented by the two extra contracts in May, 1962.

Mr. Chenenoff alleges that the compensation for only 20,000 cubic yards remains undetermined and that the payment thereon should not be evaluated at the premium rate of $0.80 per cubic yard because these 20,000 cubic yards did not involve premium work.

As noted in *Mead v. Ringling* (1954), 266 Wis. 523, 528, 64 N. W. (2d) 222, 65 N. W. (2d) 35, there is an implied promise on the part of Mr. Chenenoff to pay under *quantum meruit* the reasonable value of the services to the plaintiff which were involved in Stack's cutting more than

the 107,000 cubic yards, exclusive of the work done under the two extra contracts of May, 1962. See *Barnes v. Lozoff* (1963), 20 Wis. (2d) 644, 652, 123 N. W. (2d) 543.

The nature of the work performed by the plaintiff relative to such 20,000 cubic yards (assuming that to be the correct amount) would appear to be somewhat related to that which was done with reference to the original 107,000 cubic yards which are specified in the contract. If this be true, it may be appropriate that the plaintiff be compensated therefor at the rate of $0.31 per cubic yard.

The foregoing presupposes that the arm's length contract between the parties represents a fair and reasonable way of arriving at the going rate of pay in the community for this service. However, we deem it the better course to remand this cause to the trial court with instructions to enter a judgment which reflects an allowance of $33,100 for the 107,000 cubic yards at $0.31 per cubic yard and also provides for the recovery in *quantum meruit* for any additional work performed by the plaintiff for which the written contract did not provide a method of payment and which was not covered by the extra contracts of May, 1962. Any payments made by Mr. Chenenoff to date would be credited. The trial court, upon the remand, will be bound by our conclusion that the plaintiff is not entitled to recover at the contract price of $0.80. However, the trial court will not consider itself bound by our view that $0.31 may be a fair price in *quantum meruit;* nor will the trial court be obliged to adopt our impression that the cutting of 20,000 cubic yards remains uncompensated.

The trial court may hold additional hearings if, in its opinion, such hearings are desirable. The trial court's dismissal of the counterclaim is entirely supported by the record, and no further proceedings attendant to such counterclaim need be had.

*By the Court.*—Judgment reversed, and cause remanded with directions.