James BURGESS and John R. Burgess, Plaintiffs–Appellants,

v.

J.C. PENNEY LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 98–2617.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1998.

Decided Feb. 5, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied March 8, 1999.*

---

* The Honorable Kenneth F. Ripple voted to grant the petition. The Honorable Walter J. Cummings took no part in the consideration of the suggestion for rehearing en banc.

Steven Howard Gibbs (argued), Hertel & Gibbs, Eau Claire, WI, for Plaintiffs–Appellants.

Dennis M. Sullivan (argued), Eau Claire, WI, for Defendant–Appellee.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

On September 25, 1995, Melvin Burgess died as a result of injuries he sustained in a drunk driving accident nine days before. At the time of the accident, Mr. Burgess was covered by a life insurance policy for $100,-000 which he purchased from J.C. Penney Life Insurance Co. Mr. Burgess' sons, as beneficiaries of this life insurance policy, sought to recover the benefits from J.C. Penney as a result of their father's death. J.C. Penney denied payment based on two exclusions in the policy. The first exclusion denies payment if the loss occurred while the covered person's blood alcohol level was 0.10% weight by volume or higher, and the second denies payment if the loss occurred while the covered person was committing or attempting to commit an assault or felony. The Burgesses then brought suit against J.C. Penney to recover the benefits of their father's policy. They originally filed the suit in the Circuit Court of Chippewa County, Wisconsin, but J.C. Penney removed it to the Western District of Wisconsin. The district court, based on the alcohol exclusion contained in the policy, granted summary judgment in favor of J.C. Penney and dismissed the Burgesses' complaint. The Burgesses now appeal that ruling, and we reverse.

## I. BACKGROUND

The facts in this case have been stipulated by the parties. On September 16, 1995, at approximately 9:25 p.m., Melvin Burgess drove through a stop sign at the intersection of County Highway X and Ridgeway Drive in Chippewa County, Wisconsin. As a result, he collided into another car driven by Linda S. Glenz. When emergency medical personnel arrived on the scene, they observed that Mr. Burgess smelled of alcohol. Mr. Burgess was taken to Sacred Heart Hospital in Eau Claire, Wisconsin, where blood was drawn from him at approximately 11:58 p.m. A blood alcohol analysis revealed that Mr. Burgess' blood alcohol content ("BAC") at the time was 0.12% weight by volume. This content was higher than the state of Wisconsin's legal limit of 0.10% weight by volume. Since his BAC was greater than 0.10% in the hospital, officials concluded that Mr. Burgess' BAC at the time of the accident was also above 0.10%. As a result of the injuries he sustained in the accident, Mr. Burgess slipped into a coma. He never regained consciousness, and on September 25, 1995, he

died from the massive head injuries he sustained in the accident. At the time of his death, Mr. Burgess' BAC was below 0.10% due to the human body's metabolization of alcohol, even while in a comatose state. Finally, the parties have agreed that Mr. Burgess' death was proximately caused by his operation of his motor vehicle while intoxicated.

When the Burgesses sought to collect their benefits from J.C. Penney, it denied their claim because Mr. Burgess' blood alcohol level was 0.12% at the time of the accident, thus J.C. Penney claimed that this type of accident was not covered by Mr. Burgess' insurance policy. The district court agreed with J.C. Penney, finding that, since Mr. Burgess was legally intoxicated at the time of the accident, the only reasonable interpretation of the policy's alcohol exclusion was to deny benefits for a loss that occurred as a result of the insured's being intoxicated. Because the lower court reached its decision on this ground, it did not determine whether the assault or felony exclusion applied.

## II. STANDARD OF REVIEW

Initially, we are confronted with a standard of review argument. The Burgesses ask that, since this is an appeal of a granting of summary judgment, we review the case *de novo*, while J.C. Penney requests a review for clear error only. J.C. Penney points to our decision in *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369 (7th Cir.1992) as its support for a clear error standard. In that case, we stated that the "application of a legal standard to undisputed facts is classified as a fact for purposes of delimiting the respective spheres of trial and appellate court." *Id.* at 1373. J.C. Penney further states that since we are dealing with stipulated facts and the only issue in the case is an interpretation of those facts, then the lower court's finding is, in essence, a finding of fact and should only be reversed for clear error. We are not persuaded by this argument. Even in a case where the facts are undisputed, the interpretation of documents remains a question of law, subject to plenary review. *Schering Corp. v. Illinois Antibiot-*

*ics Co.*, 62 F.3d 903, 908 (7th Cir.1995), *cert. denied*, 516 U.S. 1140, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996). More specifically, the construction of language in an insurance policy, according to Wisconsin law (which the parties agree applies in this case) is a question of law, appropriately disposed of on a summary judgment motion. *Scottish Guarantee Ins. Co., Ltd. v. Dwyer*, 19 F.3d 307, 309 (7th Cir.1994); *Kraemer Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis.2d 555, 278 N.W.2d 857, 860 (Wis.1979). We will review the district court's decision to grant J.C. Penney's motion for summary judgment *de novo*.

## III. DISCUSSION

This case presents us with an interesting scenario in which the insured, and not the insurer, insists that we apply the contract solely based on its terms rather than reading any terms into the policy. The district court found, and both parties agree, that the insurance policy is unambiguous. Therefore, the issue in this case is not how to interpret an ambiguous provision of the policy, but rather the application of certain exclusions written into the policy by J.C. Penney. Although the district court only looked at one of the exclusions in making its decision, there are, in fact, two exclusions at issue here. The policy promises to pay the Principal Sum, in this case $100,000, in the event of the accidental loss of life. However, the policy contains the following provision: "No benefit shall be paid for Loss or Injury that: occurs while the Covered Person's blood alcohol level is .10 percent weight by volume or higher; [or] occurs while committing or attempting to commit an assault or felony." The term "Loss" is defined as loss of life. The district court concluded that the only reasonable construction of the exclusion is to ask "whether Melvin Burgess had a blood alcohol percentage higher than .10 percent when he was involved in the crash that led to his death." While there is some logic to this interpretation, the district court's decision required that it insert language into the life insurance policy that J.C. Penney could have easily included when it wrote the policy, but did not.

■ As a general rule, insurance contracts should be construed as any other sort of contract. *RTE Corp. v. Maryland Cas. Co.*, 74 Wis.2d 614, 247 N.W.2d 171, 174 (Wis.1976). When construing an insurance contract, the court must determine what a reasonable person standing in the shoes of the insured would have understood the words in the policy to mean. *Id.* at 176. If the contract is unambiguous, as it is here, then the court must construe it as it stands. *Stack Const. Co. v. Chenenoff*, 28 Wis.2d 282, 137 N.W.2d 66, 68 (1965). Any exclusion clauses written into the contract by the insurance company should be strictly construed against the insurer, *Meiser v. Aetna Cas. & Sur. Co.*, 8 Wis.2d 233, 98 N.W.2d 919, 922 (Wis.1959), and it is the burden of the insurance company to show that a particular loss falls within the exclusionary clause, *Jenkins v. Montgomery Industries, Inc.*, 77 F.3d 740, 743 (4th Cir.1996). While an insurance company is free to limit its liability, it must do so with clear language. *Meiser*, 98 N.W.2d at 922.

### A. The Alcohol Exclusion

We have come across numerous cases involving insurance companies trying to limit their liability with similar types of alcohol exclusions. A great majority of those cases concern themselves with whether or not the insurer must show a causal link between the insured's intoxication and the injury or death resulting therefrom. *See, e.g., Jenkins*, 77 F.3d at 743; *Brown v. J.C. Penney Life Ins. Co.*, 861 S.W.2d 834 (Tenn.Ct.App.1992); *Cummings v. Pacific Standard Life Ins. Co.*, 10 Wash.App. 220, 516 P.2d 1077 (Wash.Ct. App.1973). Others simply concern themselves with the factual issue of whether or not the insured was intoxicated when he died or sustained injuries. *See, e.g., Chimel v. J.C. Penney Life Ins. Co.*, 158 F.3d 966 (7th Cir.1998). In all of the cases, however, the court had to make its decision based on the language used in the policy. In the most basic terms, the insurance policies excluded from coverage either *losses sustained while* the insured was intoxicated, or *losses from injuries or accidents that occurred while* the insured was intoxicated. According to the language of the policy in this case, we are concerned with whether the loss occurred when the insured's BAC was greater than 0.10% weight by volume.

■ J.C. Penney urges us, as it did the district court, to interpret the policy to mean that benefits would not be paid for a loss that resulted from an injury as a consequence of the insured's being intoxicated. While that is certainly one way that the policy could have been written, J.C. Penney chose not to use that language in this policy. When an exclusionary clause in an insurance policy is unambiguous, the court only needs to apply it, rather than engage in any construction of the clause. *Dipasquale v. American Family Ins. Co.*, 168 Wis.2d 75, 483 N.W.2d 231, 233 (Wis.Ct.App.1992). The policy here clearly states that benefits will be excluded if the loss *occurs while* the insured's blood alcohol level is greater than 0.10% (emphasis added). Indeed, we have seen cases with J.C. Penney as a defendant where its policy reads, "no benefits shall be paid for loss *caused by or resulting from: ... an injury occurring while* covered person is intoxicated." *Brown*, 861 S.W.2d at 835 (emphasis added). It was well within J.C. Penney's discretion to write this policy in similar fashion. This case would surely not be before us now if it had. J.C. Penney more or less admitted to its faulty language at oral argument when posed with the following hypothetical: If a man who was covered by this exact policy was sitting on his porch after having a few beers (rendering his BAC greater than 0.10%) were to be struck by a meteor, would his beneficiaries be able to collect? From the language of the policy, the answer is clearly no; the insured would have suffered his loss when his blood alcohol level was greater than 0.10%. Counsel for J.C. Penney contradicted the language in its policy by stating that the policy was not meant to exclude this type of accident. However, J.C. Penney should have written what it meant, and not relied on the judicial process to interpret a clearly drafted, carefully thought out, unambiguous insurance policy. It is not a court's function to "rewrite [a] contract to create a new contract to release the insurer from a risk it could have avoided through a more foresighted drafting of the policy." *Kremers–Urban Co.*

*v. American Employers Ins. Co.*, 119 Wis.2d 722, 351 N.W.2d 156, 167 (Wis.1984).

J.C. Penney has been a party to numerous lawsuits involving the interpretation of alcohol exclusions in its insurance contracts. In a case in Tennessee, the plaintiff sought to recover benefits when the insured was drunk and got in a car accident. The plaintiff argued that J.C. Penney had to prove a causal link between the insured's state of intoxication and the accident but the court rejected that argument. All the policy required was that the loss result from injuries sustained while the insured was intoxicated. The court refused to read the causal connection requirement into the unambiguous contract. *Brown*, 861 S.W.2d at 837. In much the same fashion, we now refuse to read into the instant contract the requirement that the loss occur as a result of the injuries sustained while Mr. Burgess was intoxicated. Also, in *Chmiel, supra*, this court stated that, even though no causal connection needs to be shown by the insurer, it would not be unreasonable to imply a causation term in a policy such as this one. *Chmiel*, 158 F.3d at 969. In that case (against J.C. Penney), however, it was the insured, and not the insurer who wanted to read that causal connection into the policy. *Id.* J.C. Penney consciously drafted the instant policy to protect itself from paying for a loss that simply occurred while the insured was intoxicated. J.C. Penney cannot pick and choose when it wants courts to read language into its policies that is lacking. If it wants to limit its liability against certain risks, it must clearly state those limitations in its policies. In the very same policy, J.C. Penney excludes from coverage loss that *"is caused by or resulting from* the use of taking of any narcotic, barbiturate or any other drug by the Covered Person" (emphasis added). Obviously, J.C. Penney was aware of more specific language, since, in the very same section, it chose the proper words to adequately limit its liability for loss caused by the use of narcotics. However, J.C. Penney chose not to use that more specific language in its alcohol exclusion.

## B. The Assault or Felony Exception

 Since the district court disposed of the case by finding that J.C. Penney was not liable to the Burgesses based on the alcohol exclusion, it never reached the issue of whether the assault or felony exclusion barred the Burgesses' recovery. The wording for this exclusion is identical to the alcohol exclusion—"[n]o benefit shall be paid for Loss that *occurs while committing or attempting to commit* ... a[ ] felony." (emphasis added). J.C. Penney contends that, at the time of his loss, Mr. Burgess was in violation of Section 940.25(1), WIS. STATS., which states the following: "Any person who does any of the following is guilty of a Class D felony: (a) Causes great bodily harm to another human being by the operation of a vehicle while under the influence of an intoxicant. (b) Causes great bodily harm to another human being by the operation of a vehicle while the person has a prohibited alcohol concentration, as defined in s. 340.01(46m)." Appellee's Brief at 11. It supports this contention with Mr. Burgess' BAC at the time of the accident, and the nature of the injuries sustained by Linda Glenz in the accident. We do not take issue with either Mr. Burgess' BAC at the time of the accident or the severity of Ms. Glenz's injuries. Again, however, we do take issue with the language J.C. Penney chose to limit its liability. Mr. Burgess' loss did not *occur while* committing or attempting to commit a felony, but occurred as a result of injuries sustained while (arguably) committing a felony.[1] Hindsight is twenty-twenty, and, again, it is not the court's job to rewrite J.C. Penney's policy to protect it from a risk from which it could have easily protected itself with the addition of a few simple words. For the same reasons as above, the assault or felony exception does not apply to this situation.

## IV. CONCLUSION

Admittedly, this is a strange case. However, insurance companies need to adequately spell out to their insureds exactly what types of accidents are excluded from their policies.

---

1. Because we are basing our decision on the language chosen by J.C. Penney, we need not reach the issue of whether Mr. Burgess actually committed a felony.

The language that J.C. Penney chose in this particular policy did not cover a situation where an insured sustains injuries while intoxicated, but does not die as a result of those injuries until some time thereafter. J.C. Penney, with the addition of a few simple words, could have protected itself against this type of situation. We REVERSE the district court's granting of summary judgment in favor of J.C. Penney, and remand this case with directions to the district court to grant summary judgment in favor of the Burgesses.

RIPPLE, Circuit Judge, dissenting.

My colleagues can rely on certain well-settled maxims of insurance contract interpretation to support their interpretation of the contract. Exclusion clauses are construed strictly against the insurer, and the insurance company does bear the risk of establishing that a particular loss falls within the clause. Nevertheless, these maxims must be employed in a realistic manner so that, in the end, the insurance contract is construed to mean what a reasonable person standing in the shoes of the insured would have understood the policy to mean. *See Garriguenc v. Love*, 67 Wis.2d 130, 226 N.W.2d 414, 417 (1975). Here, in holding that the loss fell within the terms of the alcohol exclusion clause, the district court correctly read that clause as a whole and in a manner that renders it consistent with the other terms of the policy.

The district court correctly concluded that the reading urged by the plaintiffs makes sense only when the terms "loss" and "occurs while" are read in isolation—without any effort to deal with their relationship to the remainder of the alcohol exclusion clause and to the rest of the policy. All agree that the loss for which recovery is demanded is Mr. Burgess' death. That death occurred some 9 days after the injury. All also agree that this injury is the covered event. In order to establish a right to recovery, it is therefore necessary for the beneficiaries to establish a causal nexus between the injury and the covered loss. Indeed, the beneficiaries do not contest that Mr. Burgess' death was a result of the automobile accident.

The district court therefore gave the entire policy a practical, commonsense reading when it determined that, in determining the applicability of the exclusion, the focus must be on the circumstances surrounding the injury. Only in this manner can the intent of the parties—to exclude from coverage a loss caused by the ingestion of too much alcohol—be respected. *See Garriguenc*, 226 N.W.2d at 417 ("When an insurance company writes an exclusion in a liability policy it intends to limit or exclude a risk."). For this reason, I would affirm the judgment of the district court.