Debra S. **LANDRY**

v.

**J.C. PENNEY LIFE INSURANCE COMPANY.**

Civil Action No. 93–2047.

United States District Court,
W.D. Louisiana,
Lafayette Division.

Nov. 14, 1995.

Richard C. Broussard, Anderson & Broussard, Lafayette, LA, for Plaintiff.

Covert J. Geary, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Defendant.

## *OPINION*

NAUMAN S. SCOTT, District Judge.

Trial of this matter was held July 17, 1995 in Lafayette, Louisiana. The evidence at trial demonstrated that on the morning of July 23, 1993, Darrel Landry drove off the road of U.S. 90 westbound in Iberia Parish, Louisiana and was killed in a one-vehicle accident. The vehicle was found in the median of the road with beer cans strewn about the scene. Approximately five hours after Darrel Landry's death, the autopsy of Darrel Landry revealed the presence of alcohol at a level of approximately .25 percent and Benadryl at a level above the recommended therapeutic level.

The present action arises out of a claim for accidental death benefits made by Debra Landry ("Landry") following her husband's

death in the automobile accident described above. Landry purchased an accidental death insurance policy from J.C. Penney Life Insurance Company in approximately December of 1989 as a result of a mail solicitation sent to her by J.C. Penney Company with her monthly credit billing statement. Specifically, she purchased $100,000.00 of "family coverage." The policy purchased by Landry contained an intoxication exclusion, which provided that no benefits would be paid for loss caused by or resulting from intoxication of the insured. In consideration for the coverage, Landry agreed that her credit card would be billed each month for $8.95 with the payments to begin after the ninety day period of free coverage. At the time of her husband's death, Mrs. Landry's premiums were paid in full.

The central issue in this case is whether the plaintiff, Debra S. Landry, is entitled to collect on the accidental death insurance policy from defendants, J.C. Penney Life Insurance Company and J.C. Penney Company (collectively, "Penney"). This entails a two-part inquiry: (1) whether the intoxication exclusion is part of the insurance contract, and (2) whether the exclusion is factually applicable to the present case. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as conclusions of law. To the extent any of the conclusions of law are findings of fact, they are adopted as findings of fact.

### I.

■ The insurance policy at issue is a contract and the sole evidence of the specific risk that was insured. That risk cannot be limited or broadened by any other evidence. Plaintiff asserts that the defendant did not deliver a copy or certificate of the policy to her, and therefore, the intoxication exclusion contained in the policy is void from the insurance contract. Pursuant to Louisiana law, an issuer of a group health or accident insurance policy must deliver a copy or certificate of the insurance policy notifying the insured member of, among other things, the policy's exclusions. *Vidrine v. Travelers Ins. Co.,* 488 So.2d 305, 309 (La.App. 3d Cir.1986) (referring to La.R.S. 22:215). If the issuer fails to deliver a copy or certificate of insurance, then the policy holder is not bound to the exclusions contained in the policy. *Id.; Louisiana Maintenance Serv. Inc. v. Certain Underwriters at Lloyd's of London,* 616 So.2d 1250 (La.1993). Thus, in order for Landry to be bound to the intoxication exclusion, Penney must be shown to have "delivered" a copy or certificate of the policy to her.

■ Under Louisiana law, delivery of an insurance policy may be actual or constructive. *Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 574 (5th Cir.1990). Actual delivery requires proof that the policy holder actually received the policy in his or her hand. Constructive delivery, on the other hand, may be complete upon delivery of the policy by the issuer to an agent. *Id.* In *Auster Oil,* for example, the Fifth Circuit faced the question of whether delivery of an insurance policy by an insurer to its agent constituted constructive delivery. The court held that, under Louisiana law, the insurer had constructively delivered the policy upon relaying the policy to its agent, even if the agent then failed to send the actual policy to the plaintiff-insured. *Id.;* see also, *Ryan v. Security Indus. Ins. Co.,* 386 So.2d 939 (La.App. 3d Cir.1980); *Curry v. Reserve Life Ins. Co.,* 43 So.2d 312 (La.App. 2nd Cir.1949). The rule that delivery to an agent constitutes constructive delivery, however, is not without its limitations. Principally, we read a reasonableness requirement into the general proposition. To comply, an issuer must take steps reasonably anticipated to place the policy in the hands of the insured.

■ Furthermore, the burden of proving that reasonable steps have been taken to deliver the policy is owed by the insurer.[1] Although some courts have placed the burden of proving non-delivery on the policy holder, *Meche v. Washington Life Ins. Co.,*

---

1. The current version of La.R.S. 22:212(7)(c), although not effective until 1993, supports our interpretation. The statute now requires that if a policy is delivered by mail it shall be sent by certified mail or the like. Such a change in the law was aimed at eliminating the patent unfairness that results when an insurer is protected merely by claiming it mailed a copy of the policy.

578 So.2d 239 (La.App. 3d Cir.1991); *Vidrine*, 488 So.2d at 309; *Daigle v. Travelers Ins. Co.*, 421 So.2d 302 (La.App. 1st Cir. 1982), we believe the burden of proof is more properly placed on the insurer. The insured can do little more than claim he or she did not actually receive the policy. The insurance issuer, on the other hand, can create an inference of proper delivery by presenting its standard business practice and the reliability of that practice. Therefore, we hold that when a member of a group health or accident insurance policy claims that an issuer failed to deliver a certificate of insurance, the burden of proof is owed by the issuer to prove delivery.

■ Applying the facts of the present case to the law as we have set forth, we find that Penney has met its burden of proving the proper delivery of the group accidental death insurance policy to the plaintiff. Penney demonstrated that, as a matter of its normal business practice, it relays its policies to various mailing services. Furthermore, Penney proved that its mailing procedure during the time in question was reliable. Penney audited 30% of the work product of the mailing service through random audits 2–3 times a week, and kept records of any mail "returned to the sender." This procedure, under the law in effect at that time, was sufficient to constitute constructive delivery.

■ Plaintiff rebuts that Penney sent the certificate to an erroneous address, and therefore, Penney failed to "deliver" the policy. We disagree. Penney furnished the mailing service with "Route 1 Box 295, Lafayette, LA 70503" as Landry's address; the Landry address at the time in question was "Route 46 Box 295, Lafayette, Louisiana 70508." True, the address to which Penney mailed the policy was erroneous. However, this was the same wrong address that it sent all its J.C. Penney billing statements. Since Landry received and paid every billing statement sent to her at that wrong address, it is implausible that she did not receive the certificate of insurance. In addition, during the time period that Landry should have received her certificate of insurance, Penney has no record of a returned certificate that had been sent to Landry and Penney did not receive any complaints from any new certificate holders regarding non-delivery. We therefore find that the defendant did deliver the accidental death policy to Landry, and thus, the intoxication exclusion contained in the policy is effective and part of the insurance contract.

## II.

■ Since the intoxication exclusion is part of the contract, we turn to whether the exclusion applies in the present case. In order for the intoxication exclusion to apply, the defendants must prove two propositions by a preponderance of the evidence: (1) that Darrel Landry was intoxicated at the time of his fatal accident and (2) that his intoxication was a contributing cause of the accident. See, e.g., *Parker v. Kroger's Inc.*, 394 So.2d 1178 (La.1981); *Matthews v. All American Assurance Co.*, 226 So.2d 181 (La.App. 3d Cir.), *writ denied*, 254 La. 923, 228 So.2d 483 (1969); *Richard v. American Home Assurance Co.*, 318 So.2d 613 (La.App. 3d Cir.), *writ denied*, 322 So.2d 779 (La.1975); *Ober v. CUNA Mutual Society*, 645 So.2d 231 (La. App. 2d Cir 1994); *Capital Bank and Trust Co. v. Equitable Life Assurance Soc.*, 542 So.2d 494 (La.1989). The plaintiff argues that the defendant failed to carry its burden of proving by a preponderance of the evidence both that Darrel Landry was under the influence of intoxicating beverages at the time of his accident and that intoxication caused his fatality. We disagree.

LSA–R.S. 22:213(B)(10) allows insurers to exclude from coverage "any loss sustained ... in consequence of the insured's being intoxicated or under the influence of narcotics unless administered on the advice of a physician." While the statute does not define intoxication, the courts have applied the definition utilized in negligence cases—that the person has had a sufficient quantity of intoxicants to make him lose control of his mental and physical faculties. *Moore v. Central American Life Ins. Co.*, 535 So.2d 773 (La.App. 2nd Cir.1988) (citation omitted). Applying the definition to the present case, we find that Darrel Landry's state at the time of the accident in question falls within the definition of intoxication. The blood

tests of Darrel Landry after the accident revealed the presence of alcohol at a level of .25/.26 percent. Both doctors that testified agreed that Darrel Landry was intoxicated, and that drivers are impaired and unsafe at 0.25 percent.[2] After considering the evidence and the law, we find that Darrel Landry had a sufficient quantity of intoxicants to make him lose control of his mental and physical faculties at the time of his fatal accident, and that his intoxication was, at the very least, a contributing cause of his accident.

Accordingly, we find that the accidental death policy exclusion applies and Landry is not entitled to recover under the J.C. Penney accidental death policy.

Defendant is instructed to prepare a Judgment in conformity with this Opinion and submit it to this court for execution after it has been approved as to form and content evidenced by the signatures of the attorneys of record.

2. In criminal cases, LSA–R.S. 32:662 establishes a presumption that the operator of a motor vehicle was under the influence of alcoholic beverages if, at the time in question, 0.10 percent or more by weight of alcohol was in his blood. While LSA–R.S. 32:662(C) specifically provides that this presumption is not applicable to civil proceedings, the courts have consistently held that it does not prevent a civil litigant from introducing into evidence a person's blood alcohol content, along with expert testimony relating to the effects of such a level upon a person's ability to operate a motor vehicle. *Kroger's*, 394 So.2d at 1180.