Cecylia CHMIEL, Plaintiff–Appellant,

v.

JC PENNEY LIFE INSURANCE COMPANY, a foreign insurance company, Defendant–Appellee.

No. 98–1747.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1998.

Decided Oct. 20, 1998.

Markian B. Lewun (argued), Lewun & Kais, Chicago, IL, for Plainiff–Appellant.

Donald A. Murday (argued), Sean P. MacCarthy, Peterson & Ross, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from the district court's grant of summary judgment in favor JC Penney Life Insurance Company ("JC Penney") and against Cecylia Chmiel, a widow denied accidental death benefits based on a blood-alcohol exclusion in her husband's life insurance policies. We now affirm.

## BACKGROUND

Adam Chmiel held two insurance policies issued by JC Penney providing $110,000 in accidental death benefits. These benefits were payable to his wife, Cecylia Chmiel, in the event his death resulted "directly and independently of all other causes from accidental bodily injury." Each policy contained an explicit exclusion denying benefits for death that "occurs while the Covered Person's blood-alcohol level is .10 percent . . . or higher." (R.26, at 12).

On the morning of June 21, 1995, Cecylia Chmiel found her husband dead in the garage of their home. He was seated in his automobile, with the car running and the garage door closed. Based on a toxicological report and external examination performed later that day, Dr. Barry Lifschultz and Dr. Nancy B. Wu Chen of the Cook County

Medical Examiner's office determined that Mr. Chmiel's blood-alcohol level was .121 percent at the time of his death.

When Mrs. Chmiel applied for accidental death benefits under her husband's insurance policies, JC Penney denied the claim based on the blood-alcohol exclusion.[1] She then sued the company in state court seeking a declaration of her right to receive the death benefits. JC Penney removed the lawsuit to federal district court which then granted the insurer's motion for summary judgment.

## DISCUSSION

Mrs. Chmiel argues on appeal that the district court improperly granted JC Penney's motion for summary judgment because the blood-alcohol exclusion in the policies is ambiguous and unenforceable. She also disputes Mr. Chmiel's blood-alcohol level at the time of his death.

This court reviews the award of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir. 1998). We are, however, "not required to draw every conceivable inference from the record [in favor of the non-movant]—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). Summary judgment is appropriate "if there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 932 (7th Cir.1994). Under this standard Mrs. Chmiel provides us with no sufficient reason to reverse the district court's decision.

Mrs. Chmiel first argues that the blood-alcohol exclusion is ambiguous. According to her, the ambiguity lies in JC Penney's practice of looking at the facts of each claim before deciding whether benefits

should be paid under policies containing this exclusion. Thus the exclusion must be ambiguous because it is not uniformly enforced,[2] and she is entitled to a trial to determine whether her claim has met whatever criteria the insurer uses to deny benefits. However, JC Penney's consideration of the facts of each claim is not relevant to the question of the exclusion's ambiguity. *See Epright v. Environmental Resources Mgmt., Inc. Health & Welfare Plan*, 81 F.3d 335, 339 (3rd Cir.1996) (in ERISA context, past practice of administrator is of no significance in interpreting terms themselves if the plan document is clear). The insurer's enforcement practice in other cases does not change the terms of the exclusion nor render it ambiguous. *Id.* If the policy is facially clear, a court need not look beyond its language. *Cincinnati Ins. Co. v. Miller*, 190 Ill.App.3d 240, 244, 137 Ill.Dec. 755, 546 N.E.2d 700, 703 (1989). Here, neither party disputes the meaning of any material term in the exclusion and none admits to more than one interpretation. This Court must therefore give the words their "plain, ordinary and popular meaning." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108, 180 Ill.Dec. 691, 607 N.E.2d 1204, 1212 (1992); *United State Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 74, 578 N.E.2d 926, 933 (1991).

JC Penney's policies clearly exclude coverage for any person who died with a blood-alcohol level of .10 percent or higher. Therefore, the district court correctly found no ambiguity in this exclusion.

Next, Mrs. Chmiel claims that the exclusion is unenforceable. Her argument is two-fold: First, she claims that a policy exclusion must bear some rational relation to the risk being insured. Because a blood-alcohol level of .10 percent does not conclusively establish intoxication, it does not necessarily relate to any increased risk borne by JC Penney. She cites *Landry v. JC Penney Life Ins., Co.*, 920 F.Supp. 99 (W.D.La.1995)

---

1. JC Penney also maintains that Mrs. Chmiel is not entitled to benefits because her husband did not die accidentally. Because we find that the blood-alcohol exclusion is sufficient to support the district court's judgment, we need not address this issue.

2. JC Penney maintains that it consistently enforces the blood-alcohol exclusion.

and *Ober v. CUNA Mutual Society*, 645 So.2d 231 (La.App. 2d Cir.1994) in support of this proposition. Yet neither case suggests that an exclusion's enforceability depends on its relation to the risk being insured. In both *Landry* and *Ober*, insurance policies excluded coverage for deaths caused by intoxication. *Landry*, 920 F.Supp. at 102; *Ober*, 645 So.2d at 232. Thus both intoxication and causation had to be shown before the insurer could deny coverage. *Id.* Here, the JC Penney exclusion requires only that a decedent have a specified blood-alcohol level at the time of death. Under the terms of this exclusion, no connection between the blood-alcohol level and the death need necessarily be shown by the insurer. In general, when an exclusion in an agreement between two private parties is clear, definite and explicit, the court will enforce it according to its terms. *Transamerica Insurance Company v. South*, 125 F.3d 392, 398 (7th Cir.1997); *State Farm Mut. Auto. Ins. Co. v. Villicana*, 181 Ill.2d 436, 441, 230 Ill.Dec. 30, 692 N.E.2d 1196, 1199 (1998).

■ However, this does not mean that a causation requirement cannot be implied in an insurance contract like JC Penney's. It is reasonable to suggest that where no conceivable causal connection exists between the decedent's blood-alcohol level and his death, the exclusion should not be enforced. Reading such an implied term into a contract is nothing new. *See J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill.2d 265, 278, 205 Ill.Dec. 98, 642 N.E.2d 1215, 1222 (1994) (Illinois Supreme Court recognizes implied exception to no-damage-for-delay clause in construction contract); *see also Cummins v. Country Mut. Ins. Co.*, 178 Ill.2d 474, 485, 227 Ill.Dec. 539, 687 N.E.2d 1021, 1027 (1997) (in determining whether coverage is appropriate, court can consider policy holder's reasonable expectations and coverage intended by the insurance policy). But under such an approach, the burden of disproving any causal connection would fall on the beneficiary. *See* 162 Ill.2d at 279, 642 N.E.2d at 1222–23. Unlike *Landry* and *Ober*, where the insurance companies had to establish causation pursuant to an express term in their insurance contracts, here Mrs. Chmiel would have had to show that alcohol had nothing to do

with her husband's death. She has made no attempt to do so, and therefore cannot succeed on this argument.

Mrs. Chmiel also argues that the exclusion should not be enforced because it violates public policy. *Hall v. Burger*, 277 Ill.App.3d 757, 761, 214 Ill.Dec. 379, 660 N.E.2d 1328, 1331, *appeal denied*, 167 Ill.2d 553, 217 Ill. Dec. 664, 667 N.E.2d 1057 (1996). She asserts that an exclusion based solely on a specified blood-alcohol level instead of 'intoxication' works hardship on the general public by denying coverage for those who merely consume alcohol. So long as alcohol consumption is a legal activity, she reasons, it may violate public policy to make that the basis for an insurance exclusion. *See Hertz Corp. v. Garrott*, 238 Ill.App.3d 231, 239, 179 Ill.Dec. 387, 606 N.E.2d 219, 224 (1992). Mrs. Chmiel's reliance on *Hertz*, however, is mistaken. In that case, a car rental company attempted to exclude liability coverage for any customer who drove while intoxicated. *Id.* The court held the exclusion invalid in light of an Illinois statute requiring car rental companies to provide liability coverage as a condition of doing business in the state. *Id.* However, the strong public policy mandating automobile liability insurance is not implicated here. This case deals only with accidental death benefits. In fact, the Director of the Illinois Department of Insurance has explicitly approved JC Penney's blood-alcohol exclusion and has found that it complies with Illinois' statutory requirements. *See Holloway v. JC Penney Life Ins. Co.*, 4 F.Supp.2d 754, 756 (N.D.Ill.1998).

Mrs. Chmiel points to no public policy threatened by the enforcement of this exclusion. On the contrary, not allowing an insurer to rely on clear, mutually accepted terms contradicts the public policy in favor of freedom of contract. *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.*, 226 Ill.App.3d 507, 512, 168 Ill.Dec. 634, 589 N.E.2d 1034, 1037 (1992). Therefore, the district court correctly found the exclusion enforceable.

■ Finally, Mrs. Chmiel claims that even if the exclusion is unambiguous and enforceable, her husband's blood-alcohol level at the time of his death is disputed, precluding summary judgment. She argues that because

the medical examiners could not prove the exact time of Mr. Chmiel's death, they could not positively determine whether his blood-alcohol level was above .10 percent when he died. She further asserts that as her husband's body decomposed, his blood-alcohol level could have increased. Yet both Dr. Lifschultz and Dr. Wu Chen testified that, based on the toxicological report and the examination, they estimate that Mr. Chmiel died at 6:00 a.m. on June 21, 1995 and at that time, his blood-alcohol level was .121 percent. Dr. Lifschultz further testified that he found no evidence that Mr. Chmiel's body had decomposed between his death and the examination. Mrs. Chmiel offers no evidence to the contrary. She has thus failed to establish that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To avoid summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric, Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Because Mrs. Chmiel does no more than assert the possibility of a factual dispute, the district court correctly disposed of this issue on summary judgment. Accordingly, that judgment is AFFIRMED.