Mardell HOLLOWAY, as an heir of William Holloway; Carolyn Gilbert, as an heir of Charles Jones II; Charles Jones, III, as an heir of Charles Jones, II, on their own and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

J.C. PENNEY LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 98–1762.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1999.

Decided Sept. 22, 1999.

Rehearing and Rehearing En Banc Denied Nov. 2, 1999.

Joshua Karsh (argued), Kevin B. March, Plotkin & Jacobs, S. Jerome Levy, Levy, Leopold & Associates, Chicago, IL, for Plaintiffs–Appellants.

Marci A. Eisenstein, John A. Bannon (argued), Schiff, Hardin & Waite, Chicago, IL, for Defendant–Appellant.

Before BAUER, CUDAHY and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case requires us to interpret several related provisions of the Illinois insurance statute. At issue is whether an accident insurance policy may contain an exclusion for loss that occurs while the insured is intoxicated. The plaintiffs argue that such a provision is unenforceable under Illinois law, which allows such an exclusion only when the intoxication causes the loss. The insurer contends that the provision was allowable because the Director of the Illinois Department of Insurance approved the policy language at issue. We conclude that the plaintiffs have the better side of this argument, and we reverse and remand.

**I.**

The plaintiffs are the beneficiaries of the two policies in dispute. Both insureds bought accidental death and dismemberment insurance policies through J.C. Penney Life Insurance Company. Penney's policy contained a "status intoxication" exclusion, the purpose of which was to relieve Penney of liability for losses that occur while the insured was intoxicated. An insured is intoxicated under the terms of the policy if he or she has a blood

alcohol content of .10 percent or higher. Everyone agrees that the insureds here were intoxicated at the time of their deaths. The plaintiffs contend that under Illinois law, an insurer may exclude coverage only for losses which occur *because of* intoxication, also known as a "cause" exclusion, and that status exclusions are void under Illinois law. We begin as the district court did, by examining the language of the policy at issue and the statutes involved.

Holloway's policy provided that "[n]o benefit shall be paid for Loss that occurs while the Covered Person's blood alcohol level is .10 percent weight by volume or higher." Jones' policy contained an identical provision and additional language stating that "a causal connection between the injury and the loss is not required." The plaintiffs agree that this language is unambiguous and, if enforceable, would exclude them from coverage. The language is not enforceable, they claim, because of certain provisions of the insurance code. In particular, plaintiffs point to section 357.14, which provides in relevant part:

> Except as provided in section 357.26, no such policy delivered or issued for delivery to any person in this State shall contain provisions respecting the matters set forth in sections 357.15 through 357.25 unless such provisions are in the words in which the same appear in this article; provided, however, that the company may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the Director which is not less favorable in any respect to the insured or the beneficiary.

215 ILCS § 5/357.14. Section 357.25 addresses the issue of intoxication exclusions and provides the following model policy language:

> INTOXICANTS AND NARCOTICS: The company shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician.

215 ILCS § 5/357.25. The parties agree that Penney's policy contained language on a matter set forth in section 357.25, namely intoxication, and that the language was different from and less favorable than the language contained in section 357.25. That section excludes coverage only if the loss is sustained in consequence, or because of intoxication. Penney's policy excludes coverage for intoxicated persons whether or not the loss was sustained as a result of the intoxication. Under Penney's version of the policy, if the insured was sitting on her porch drinking beer and was struck by a meteor, she would not be covered by the policy. *See Burgess v. J.C. Penney Life Ins. Co.*, 167 F.3d 1137, 1140 (7th Cir.1999). Clearly such a provision is not as favorable to the insured or the beneficiaries as the model language provided in section 357.25, and Penney does not dispute this point.

What Penney disputes is whether it was allowed to institute the more restrictive provision under section 357.26. That section provides:

> If any provision of the preceding sections is in whole or in part inapplicable to or inconsistent with the coverage provided by a particular form of policy the company, with the approval of the Director, shall omit from such policy any inapplicable provision or part of a provision, and shall modify any inconsistent provision or part of the provision in such a manner as to make the provision contained in the policy consistent with the coverage provided by the policy.

215 ILCS 5/357.26. Penney maintains that sections 357.15 through 357.25 provide model language that an insurer may use if it does not wish to seek approval from the Director of the Department of Insurance, and instead wishes to offer policies that track that language. Penney interprets section 357.26 to mean that if it wishes to offer a policy with different terms, even terms which are less favorable to the insured than those set forth in sections 357.15 through 357.25, it may do so as long

as it obtains the approval of the Director. Under this interpretation, Penney construes the term "form of policy" to mean the particular policy form for the coverage it wishes to offer. The plaintiffs contend that Penney's interpretation ignores the plain language of the statute, and renders the phrase "not less favorable" in section 357.14 meaningless. The plaintiffs construe the term "form of policy" to mean the type of insurance being offered, and argue that section 357.26 gives the Director authority only to allow changes where the model provisions are inconsistent with or inapplicable to a particular type of policy. Plaintiffs contend that the Director's discretion is cabined by the "not less favorable" requirement of section 357.14 to the extent an insurer seeks to change policy terms relating to matters addressed in sections 357.15 through 357.25.

The district court agreed with Penney's interpretation of section 357.26. Finding first that Penney's status intoxication exclusion was "obviously" worse for insureds than a cause exclusion, the court held that sections 357.15 through 357.25 do not set a floor on the level and quality of insurance that must be provided. Instead, the court found, these were merely pre-approved insurance provisions. Recognizing that this reading of the statute had to be reconciled with the "not less favorable" language of section 357.14, the court explained that this language

> prohibits an insurance company from employing obfuscatory boilerplate in the relevant sections of its policy. While "not less favorable" is an inelegant way of expressing this idea, sections 357.15 through 357.25 are written in plain English, and it appears to have been the Illinois General Assembly's intent that any substitute for them not be any less understandable to the average policyholder.

*Holloway v. J.C. Penney Life Ins. Co.*, 4 F.Supp.2d 754, 756 (N.D.Ill.1998). The court found that the Director had approved the policy as written by Penney, a finding the plaintiffs do not dispute on appeal. Because the provision was unambiguous, not less understandable than section 357.25, and approved by the Director, the court enforced the provision as written and granted Penney's motion for summary judgment. The plaintiffs appeal.

## II.

On appeal, the plaintiffs argue that sections 357.15 through 357.25 are meant to set a substantive floor on the level of insurance an insurer must provide for certain types of policies. The plaintiffs claim that the plain language of the statute supports this interpretation, and that any other reading of the statute renders entire sections of the code surplusage. Penney defends its policy by maintaining that section 357.26 allows it to offer any terms it wishes so long as the Director approves those terms. Because the Director approved the policy at issue, Penney claims it was entitled to summary judgment.

### A.

The crux of the problem, as the district court recognized, is how to reconcile section 357.14 with section 357.26. Section 357.14 requires an insurer to use particular language for certain subject areas, but allows the insurer to seek approval from the Director for different wording so long as it is "not less favorable" than the language provided by the statute. Section 357.14 requires this result "[e]xcept as provided in section 357.26." Section 357.26 provides that if any of the model provisions are "inapplicable to or inconsistent with the coverage provided by a particular form of policy," the insurer may seek approval from the Director to omit any inapplicable provision or modify any inconsistent provision "in such a manner as to make the provision contained in the policy consistent with the coverage provided by the policy."

The plaintiffs point out that if section 357.26 is truly as broad as Penney claims, allowing an insurer to obtain approval for any language whatsoever, then an insurer would never seek approval under section 357.14 which requires that changes be "not less favorable" to the insured. The "not

less favorable" language would never apply if an insurer could obtain approval from the Director under 357.26 simply by making its policy "inconsistent" with the model provisions. Under the plaintiffs' interpretation of the statute, the phrase "form of policy" means "type of policy." Penney counters that section 357.14 begins with the words "except as provided in section 357.26" and therefore anticipates that an insurer may bypass the limitations of 357.14 under certain circumstances. The insurer takes the risk, Penny says, that the Director will not approve the changes. Penney adopts the district court's definition of "not less favorable," namely that it means "not less understandable" than the model provisions. Penney contends that "form of policy" simply refers to the policy form that it intends to use for a particular policy. The parties also argue over the meaning of "inconsistent" and "inapplicable," each arguing that the other's interpretation renders one of these words meaningless or superfluous.

## B.

We begin by looking to our case law to determine if this question has already been answered. Penney relies on *Equitable Life Assurance Soc'y of the United States v. Bell*, 27 F.3d 1274 (7th Cir.1994), to support its view that it was merely required to seek approval from the Director in order to offer a policy with a status intoxication exclusion. In *Bell*, the insured failed to disclose at the time he applied for disability insurance that he had multiple sclerosis, instead affirmatively representing that he was in good health. An incontestability provision specified that after the policy had been in effect for two years, "it shall become incontestable as to the statements contained in the application." 27 F.3d at 1276. The policy also provided that it would not cover any loss for injury or illness first manifesting itself prior to the effective date of the coverage, subject to the incontestability clause. More than two years after obtaining the policy, Bell became disabled by multiple sclerosis, and made a claim under the policy. The insur-

er sought to deny the claim on the basis that the illness manifested itself prior to the effective date of coverage, and that the policy meant only to cover preexisting, not pre-manifesting illnesses. We held that the purpose of the incontestability provision was to preclude the insurer from denying coverage even if the insured's statements rose to the level of fraud. 27 F.3d at 1279. State law, in that case Indiana law, allowed insurers the option of including in the incontestability clause an exception for fraudulent misrepresentations, and the insurer had elected not to include this exception. *Id.*

As for the difference between pre-existing and pre-manifesting illnesses, we stated that preexisting conditions included pre-manifesting illnesses, and that the insurer could not exclude coverage for pre-manifesting illnesses when the statutorily required incontestability clause did not allow an exclusion for pre-existing illness. In *dicta*, we opined that an insurer wishing to limit its incontestability clause could do so by seeking approval from the Indiana state commissioner of insurance under a statutory provision nearly identical to Illinois' section 357.26. It is this *dicta* on which Penney hinges its case. There are a number of problems with Penney's reliance on this passage. First, that discussion in *Bell* is pure *dicta*. Second, neither party raised in that case any language in the Indiana statute comparable to Illinois' section 357.14 "not less favorable" language. We therefore analyzed Indiana's version of 357.26 as if no such requirement existed, leading us to the conclusion that the insurer could have sought approval from Indiana's insurance commissioner to exclude coverage for pre-manifesting illnesses notwithstanding the required incontestability clause.

Third, in the very passage in *Bell* on which Penney relies, we cited an Arizona case for the proposition that the insurer could not make the incontestability clause more onerous to the insured than the statute provided or include exceptions to incontestability other than those permitted by statute. *Bell*, 27 F.3d at 1283 (citing

*National Life & Cas. Ins. Co. v. Blanken-biller*, 89 Ariz. 253, 360 P.2d 1030, 1032 (1961)). We thus noted that limits sometimes exist on what changes a director or commissioner of insurance ·may approve, and specifically pointed out one state in which the insurer could not change the policy to render it more onerous on the insured than the statute allowed. Penney's reliance on *Bell* is thus misplaced.[1]

Penney relies on a more recent pronouncement from our Court as well. In *Chmiel v. J.C. Penney Life Ins. Co.*, 158 F.3d 966 (7th Cir.1998), a beneficiary challenged Penney's refusal to pay death benefits under an identical status exclusion provision. Chmiel, the beneficiary, maintained that the status exclusion was ambiguous and unenforceable. We rejected her claim that the policy was ambiguous merely because Penney looked at the facts of each case before deciding whether the exclusion applied. Instead we held that where the policy is facially clear, a court need not look beyond its language. 158 F.3d at 969. Chmiel's claim that the policy was unenforceable was two-fold: first, she argued that a policy exclusion must bear some rational relation to the risk

being insured. Second, she claimed that the policy violated public policy. Again we looked to the plain terms of the policy in finding that no relation between the risk and the exclusion was required. *Id.* We rejected her public policy argument, which consisted entirely of the claim that as long as the consumption of alcohol is legal, status exclusions violate public policy. We looked to the public policy in favor of freedom to contract. At no time did Chmiel raise the issue that is central to this case, namely, whether the Director has the authority to approve policies that are less favorable to the insured on the matters set forth in sections 357.15 through 357.25.[2] *Chmiel* therefore provides no answer to this question.

Although there are a number of cases involving Penney's status exclusion, we were unable to find any case where the beneficiary made the argument the plaintiffs make here, that the Director was without authority to approve a provision that was less favorable to the insured than the statutory provision addressing the same subject matter.[3] We must look, therefore, at the plain language of the Illinois insurance code and apply the rules

1. Penney asserted at oral argument that the language in *Bell* on which it relies is not *dicta* because the language was integral to distinguishing a contrary Fifth Circuit case. See *Massachusetts Cas. Ins. Co. v. Forman*, 516 F.2d 425 (5th Cir.1975). However, a careful reading of *Bell* will demonstrate that we distinguished *Forman* by applying the plain and ordinary meaning of the statutory language at issue. An additional distinguishing factor was the Indiana provision requiring insurers to seek approval from the commissioner of insurance to change policy terms. Because this additional factor was not necessary to our holding, the discussion of it was *dicta*.

2. In *Chmiel*, we noted that the Director has "explicitly approved JC Penney's blood alcohol exclusion and has found that it complies with Illinois' statutory requirements." 158 F.3d at 969. The plaintiff there did not, however, challenge whether the Director had the authority to approve that provision, and that is the issue we address today.

3. See *Hastie v. J.C. Penney Life Ins. Co.*, 115 F.3d 895 (11th Cir.1997); *Lane v. J.C. Penney Life Ins. Co.*, 60 F.3d 833 (9th Cir.1995);

*Shipley v. J.C. Penney Life Ins. Co.*, 9 F.3d 109 (6th Cir.1993); *Sobczak v. J.C. Penney Life Ins. Co.*, 1997 WL 83749 (E.D.Pa. 1997); *Jensen v. J.C. Penney Life Ins. Co.*, 201 Wis.2d 818, 549 N.W.2d 287 (1996); *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352 (Iowa 1995); *Landry v. J.C. Penney Life Ins. Co.*, 920 F.Supp. 99 (W.D.La.1995); *Brown v. J.C. Penney Life Ins. Co.*, 861 S.W.2d 834 (Tenn.Ct. App.1992). In one case, Penney submitted an affidavit from a former Director of the Illinois Department of Insurance, in which the ·former Director averred that he was authorized to approve variances from the required statutory provisions. The plaintiff there did not oppose the affidavit, and the court credited the Director's statement, finding that Penney's policy had been approved and that the Director had authority for the approval. Here, the beneficiaries challenge the Director's authority to approve such changes, and this case is neither controlling nor persuasive. See *Greene v. J.C. Penney Life Ins. Co.*, 23 F.Supp.2d 1351 (M.D.Fla.1997).

of statutory construction to ascertain how the Illinois Supreme Court would interpret these provisions.

## C.

According to the plaintiffs, the district court's interpretation violates several rules of statutory construction. First, the district court failed to read related provisions of the statute together. Second, the district court's decision gave priority to general language in section 357.26 over the more specific and limiting language in sections 357.1, 357.14, and 367(2). Third, the district court's interpretation of the statute renders several sections of the code meaningless, violating the rule that a statute should be construed in such a way that no word, clause or sentence is rendered meaningless or superfluous.

We agree that Penney's interpretation fails to give any meaning to section 357.14. The requirement that the language be "not less favorable" than that provided by the model sections becomes meaningless if an insurer can obtain approval from the Director under section 357.26 for any language, even language that is clearly less favorable to the insured. The district court's reading of the phrase "not less favorable" to mean "not less understandable" is untenable. "Favorable" is an easily understood word, meaning advantageous or beneficial. We suspect no dictionary would define "favorable" as meaning "understandable."

Penney argues that this reading of section 357.14 removes any meaning from section 357.26. But the plain language of 357.26 belies that claim, for 357.26 applies when the statutory model provisions are inapplicable to or inconsistent with the type of policy being offered. For example, the mandatory provisions apply to accident and health insurance policies, but if an

insurer offered a policy limited to coverage for accidents, the language relating to the onset of illness would be inapplicable to and inconsistent with the policy offered. The insurer could seek approval from the Director in that instance to delete the offending language. For example, section 357.15 begins "If the insured be injured or contract sickness after changing his occupation ..." If the insurer was offering accident coverage only, it could seek approval from the Director to delete the words "or contract sickness" from that otherwise required model language. Similarly, section 357.16 relating to misstatement of age, could be deleted entirely, with the approval of the Director, if the proceeds paid under the policy were the same no matter what the age of the insured. Section 357.26 thus retains the meaning intended by the Illinois legislature, allowing an insurer to remove or revise language that is inapplicable to or inconsistent with the type of policy being offered.

This reading is supported by other provisions in the insurance code, including section 5/367, which addresses group accident and health insurance policies. That section provides in relevant part that

> [n]o policy of group accident and health insurance may be issued or delivered in this State unless ... it contains in substance those provisions contained in Sections 357.1 through 357.30 as may be applicable to group accident and health insurance.

215 ILCS § 5/367(2). That section then requires additional model language for group policies beyond the language required by sections 357.1 through 357.30. The fact that every group policy must contain these provisions lends further support to the claim that the legislature meant for these provisions to set a floor on coverage for individual policies as well.[4] Section

---

4. Section 5/367 helps resolve the meaning of "form of policy" as well. The plaintiffs contend this phrase means "type of policy" and Penney claims it means the actual policy form that Penney uses for a particular policy. Section 5/367 specifies that "[g]roup accident and health insurance is hereby declared to be

that form of accident and health insurance covering not less than 10 employees ..." Thus the legislature appears to have used the word "form" to mean "type." Applying the same meaning elsewhere in the code, section 357.26 applies when any of the provisions in

357.1 also supports this reading of the code, as it also sets a floor on the coverage that must be provided in accident and health policies. *See* 215 ILCS § 5/357.1 (titled "Accident and health policy provisions required" and stating in language identical to section 357.14 the provisions that are required unless the insurer substitutes language that is not less favorable to the insured that is approved by the Director).

Moreover, this interpretation is bolstered by reading some of the other provisions in sections 357.15 through 357.25, the other model provisions. Many are of a type that would be considered substantive in nature, and Penney could not seriously argue that it could change these provisions simply by obtaining the Director's approval. For example, section 357.18 provides that when an insured has coverage for the same loss from two different insurers, liability is shared on a *pro rata* basis. Penney would be hard pressed to maintain that it could disclaim all liability if the insured had another policy simply by changing the policy language to state that its *pro rata* share was always zero in the event of double coverage. Nor could Penney obtain approval to shorten the length of notice required to cancel a policy from the 30 days required in section 357.22 to 10 days, for example. Such provisions, especially when accompanied by the "not less favorable" language of section 357.14, are clearly meant to set a floor on the level of coverage to be provided in these kinds of policies.

### III.

The Director was not authorized by the statute to approve policies that were less favorable to the insured than the mandatory provisions in sections 357.15 through 357.25. The fact that the Director approved the Penney policy at issue is therefore irrelevant. *See Bertini v. State Farm Mutual Auto. Ins. Co.*, 48 Ill.App.3d 851, 6 Ill.Dec. 435, 362 N.E.2d 1355, 1358 (1977)

sections 357.15 through 357.25 are inapplicable to or inconsistent with a particular type of policy. A contrary reading would render the section a tautology, for an insurer could al-

(policy provisions that are contrary to the insurance code are void even if approved by the Director). Reading the policies in conformity with state law, the beneficiaries were entitled to recover unless the loss was a consequence of the decedents' intoxication. That issue remains to be litigated.

Finally, the district court does not appear to have separately considered the plaintiffs' Illinois Consumer Fraud Act claim, granting summary judgment on the whole case. We decline to consider this claim in the first instance on appeal. Because we reverse and remand the claim for benefits, the district court may consider the Consumer Fraud Act claim on remand.

REVERSED AND REMANDED.

ways make certain that a particular provision was inapplicable to or inconsistent with the model code and then seek approval under section 357.26.