**THE ANDERSONS, INC., Plaintiff,**

v.

**FALL GRAIN, INC., Defendant.**

No. 09–CV–2060.

United States District Court,
C.D. Illinois,
Urbana Division.

Aug. 18, 2009.

---

Richard A. Wunderlich, Steven D. Hall, Lewis, Rice & Fingersh, St. Louis, MO, for Plaintiff.

Christopher L. Gallinari, Bellows & Bellows, P.C., Chicago, IL, for Defendant.

## OPINION

MICHAEL P. McCUSKEY, Chief Judge.

Plaintiff, the Andersons, Inc., brought a Motion to Confirm Arbitration Award (# 1) on March 4, 2009. On April 22, 2009,

Plaintiff filed a Motion for Summary Judgment (# 7). On April 29, 2009, Defendant, Fall Grain, Inc., filed its own Motion to Vacate Arbitration Award (# 8). Defendant then filed its Response to Plaintiff's Motion for Summary Judgment (# 10) on the same day. Plaintiff filed its Response to Defendant's Motion to Vacate Arbitration Award (# 11) on May 18, 2009. Plaintiff filed its Reply to Defendant's Response (# 12) on June 1, 2009. For the following reasons, Plaintiff's Motion for Summary Judgment (# 7) is GRANTED in full. Defendant's Motion to Vacate Arbitration Award (# 8) is DENIED.

## BACKGROUND

Defendant entered into a series of "cash forward contracts" with The Andersons Agriservices, Inc., a wholly owned subsidiary of Plaintiff, for the periodic shipment and sale of corn to Agriservices during the course of the 2008 crop year (the "Contracts"). The Contracts provided that in the event Defendant failed to perform its duties under the Contracts and failed to sell corn to Agriservices as it was obligated to do, Defendant "shall be liable for [Agriservices's] attorney fees, costs of collection, plus interest."

The Contracts were in writing and all contain an identical arbitration clause requiring that any dispute arising from the Contracts be submitted to binding arbitration under the Rules of the National Grain and Feed Association (NGFA). The Arbitration Clause provides:

"Both parties agree: (A) THIS CONTRACT IS MADE IN ACCORDANCE WITH THE APPLICABLE GRAIN TRADE RULES OF THE NATIONAL GRAIN AND FEED ASSOCIATION (A COPY WILL BE PROVIDED UPON REQUEST) EXCEPT AS MODIFIED THEREIN, AND THE PARTIES WILL BE BOUND THEREBY; AND (B) ANY DISPUTES OR CONTROVERSIES ARISING OUT OF THIS CONTRACT SHALL BE ARBITRATED BY THE NATIONAL GRAIN AND FEED ASSOCIATION, PURSUANT TO ITS ARBITRATION RULES. THE DECISION AND AWARD DETERMINED THROUGH SUCH ARBITRATION SHALL BE FINAL AND BINDING UPON THE BUYER AND SELLER. JUDGMENT UPON THE ARBITRATION AWARD MAY BE ENTERED AND ENFORCED IN ANY COURT HAVING JURISDICTION THEREOF."

After a dispute arose concerning the Contracts, Plaintiff filed a complaint with the National Secretary of the NGFA, pursuant to NGFA Rule 5(a), to arbitrate the dispute. Pursuant to NGFA Rule 5(b), the NGFA National Secretary prepared an arbitration contract that he distributed to Plaintiff and Defendant, and under NGFA Rule 5(d), "it shall be the duty of both parties to complete the contract for arbitration within fifteen (15) days from the date the party receives the contract from the [NGFA] National Secretary."

On or about November 12, 2008, Plaintiff executed and returned the Arbitration Contract to the NGFA along with the arbitration fee in the amount of $10,000 within 15 days of its receipt. Defendant received its copy of the Arbitration Contract as well as repeated notice of the pending arbitration commenced by Plaintiff, including by the following means and dates: NGFA sent Defendant a certified letter on November 12, 2008 that was signed for as received on November 17, 2008; NGFA sent Defendant a certified letter on November 24, 2008 that was signed for as received on December 1, 2008; NGFA sent Fall Grain a letter via Federal Express on January 8, 2009 with delivery confirmed on January 12, 2009; and NGFA sent Defendant a letter via Federal

Express on January 16, 2009 with delivery confirmed on January 20, 2009.

Section 5(e) of the NGFA Rules provides as follows: "Where a party fails ... to execute the [Arbitration Contract], the National Secretary may without further submissions by the parties enter a default judgment." The fourth and final notice sent to Defendant by NGFA on January 16, 2009, contained an express warning to Defendant that its failure to tender a response within 15 days would result in a default judgment being entered against Defendant. After the passage of 15 days without having received any response from Defendant, NGFA entered a default judgment against Defendant and in favor of Plaintiff in the amount of $3,557,500.00, plus interest to accrue at the statutory rate from January 30, 2009 until paid in full.

After the entry of default judgment and/or the Arbitration Award, Plaintiff filed this present action against Defendant on March 4, 2009, asking this court to confirm the Arbitration Award and award it the costs (including the cost of the arbitration) and the legal fees incurred. On April 7, 2009, Defendant filed its Answer (# 6) with no affirmative defenses.

*Plaintiff's Motion for Summary Judgment*

Plaintiff filed its Motion for Summary Judgment (# 7) on April 22, 2009. In the Motion, Plaintiff argues that summary judgment should be granted because Defendant did not raise an applicable defense to vacate or modify/correct the Arbitration Award under the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1, et seq.). Pointing to the FAA, Plaintiff notes that an arbitration award must be affirmed unless it is "vacated, modified, or corrected as prescribed in §§ 10 and 11" of the FAA. *Jimmy John's v. Kelsey*, 549 F.Supp.2d 1034, 1037 (C.D.Ill.2008). Plaintiff points out that Defendant, in its Answer, did not

rise to the level of implicating one of the grounds set forth in sections 10 or 11 of the FAA. 9 U.S.C. §§ 10, 11.

Further, Plaintiff notes that in a different lawsuit between the same parties, this court previously construed identical arbitration clauses contained in wheat and other corn contracts. In that other case, *The Andersons Inc. v. Jerry G. Walker, Ellen M. Walker, Stephanie Walker Spiros, Jeremy Walker, and Fall Grain, Inc.*, 08–CV–2083, 08–CV–2098, Plaintiff had filed a motion to compel Defendant Fall Grain to arbitrate a dispute related to those contracts. After Defendant filed a response in opposition, this court rejected Defendant's arguments that it was not bound by the identical arbitration clause, ruling that the wheat contracts' arbitration clause required Defendant to arbitrate the dispute and granted Plaintiff's motion to compel. Subsequently, Plaintiff filed a motion for summary judgment related to a dispute involving other corn contracts but containing the identical arbitration clause that the court previously considered in granting Plaintiff's motion to compel. As in the present case, Defendant chose not to participate in the corn contract related arbitration, resulting in the arbitrator issuing a default judgment in Plaintiff's favor. Plaintiff filed a motion for summary judgment, asking this court to confirm the arbitration award. This court granted Plaintiff's motion.

Plaintiff, in the present case, concludes its Motion for Summary Judgment (# 7) by asking this court to: (1) confirm the arbitrators' award in the amount of $3,557,500.00 plus interest to accrue at the statutory rate from January 30, 2009 until paid in full; (2) enter final judgment in conformity with that order; (3) allow Plaintiff to recover the attorneys fees and costs incurred for a total of $11,354.88;

and (4) allow Plaintiff to recover the arbitration fees of not less than $10,000.

*Defendant's Response*

Defendant filed its Response In Opposition to Plaintiff's Motion for Summary Judgment (# 10) on May 18, 2009. In its Response, Defendant noted that each written confirmation of the Contracts identified the seller as "Fall Grain" and the purchaser as "Andersons Agriservices." Although the written confirmations contain a clause providing for arbitration of disputes and referring to the Arbitration Rules of the NGFA, Agriservices would not be a proper party to any such arbitration because, Defendant argues, Agriservices is not a member of the NGFA. Defendant also cited to Section 3 of the NGFA Arbitration Rules, stating that the NGFA may only consider cases involving a dispute between (1) active members of the NGFA or (2) an active NGFA member and nonmember if there is consent by both parties, such as the contract in dispute providing for arbitration by the NGFA or under its rules.

Defendant's main argument is that there was no valid and enforceable agreement to arbitrate before the NGFA because neither Agriservices nor Defendant was a member of the NGFA, thus the NGFA did not have jurisdiction over disputes concerning their contracts. Also, Plaintiff was not a party to the contracts. Defendant also argues that Plaintiff has failed to make a proper showing in support of its claim for attorney fees because it failed to provide evidence in support of the alleged reasonableness of those fees.

*Plaintiff's Reply*

Plaintiff filed its Reply in Support of Plaintiff's Motion for Summary Judgment (# 12) on June 1, 2009. In the Reply, Plaintiff counters that the Arbitration Clause was enforceable because Agriservices was a member of the NGFA, as Agriservices was a wholly owned subsidiary of Plaintiff, and was an NGFA member by virtue of its parent company's membership in the NGFA. Plaintiff argues that when the Contracts in question were executed in 2006, Agriservices, identified by the Contracts as the buyer, was a wholly owned subsidiary of Plaintiff, and Plaintiff was an NGFA member.

Further, Plaintiff argues the face of the Contracts identifies Plaintiff as a party to the contracts and that Plaintiff assumed all rights of Agriservices when the two entities merged. In support of its arguments, Plaintiff attached several exhibits to the Reply:

Attached to the Reply (# 12) were documents concerning the relationship between Agriservices and Plaintiff. Attached as Exhibit 2 was the affidavit of Richard R. George, Plaintiff's Vice President/Chief Corporate Comptroller and Chief Information Officer, attesting that in 2006 Plaintiff owned 100% of the stock of Agriservices. Attached as Exhibit 3 was the affidavit of Todd Kemp, the Director of Marketing/Treasurer for the National Grain and Feed Association, who had access to the NGFA's membership rolls for any given year, attesting that Plaintiff was a member of the NGFA for the years that include 2005, 2006, 2007, 2008, and 2009. Also attached as Exhibit 4 was official documentation from the Ohio Secretary of State, J. Kenneth Blackwell, dated December 31, 2006, documenting the domestic merger of Agriservices with Plaintiff.

Costs in the matter totaled $409.38 and legal fees totaled $10,945.50. Plaintiff attached to its Reply (# 12) several affidavits attesting to the legal fees and costs: the affidavit of Richard A. Wunderlich (Exhibit 5), attesting to an hourly billing rate of $435.00 and 2.3 hours of work, resulting in fees of $1,000.50; the affidavit of Steven D. Hall (Exhibit 6), attesting to an hourly billing rate of $290.00 and 28.9 hours of

work, resulting in fees of $8,381.00; and the affidavit of Jayme E. Major (Exhibit 7), attesting to an hourly billing rate of $170.00 and 9.2 hours of work, resulting in fees of $1,564.00. Each affidavit contained a detailed breakdown of dates, services rendered, and how many hours each service rendered took on said date.

*Defendant's Motion to Vacate Arbitration Award and Plaintiff's Response*

On April 29, 2009, Defendant filed a Motion to Vacate Arbitration Award (# 8), to which Plaintiff responded on May 18, 2009. The arguments raised and the law in support cited by both parties in these filings are nearly, if not completely, identical to the issues and law raised in the summary judgment motion. Therefore, the court need not restate the preceding paragraphs.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(b), "a party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed.R.Civ.P. 56(b). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F.Supp.2d 917, 929 (C.D.Ill. 2002). Speculation, however, is not the source of a reasonable inference. *See Burwell*, 213 F.Supp.2d at 929, *citing Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir.1998).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir.2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004).

## ANALYSIS

Defendant, in this case, uses the same argument it used regarding the other 2006 wheat and corn contracts entered into by Agriservices and Defendant in cases 08–CV–2083 and 08–CV–2098. Namely, that there was no valid and enforceable agreement to arbitrate before the NGFA because Agriservices and Defendant were not NGFA members, thus the NGFA lacked jurisdiction to render the default award in Plaintiff's favor and against Defendant.

The Federal Arbitration Act (FAA) mandates enforcing arbitration agreements if such agreements are (1) written; (2) part of a contract or transaction involving interstate commerce; and (3) valid under general principles of contract law. 9 U.S.C. § 2. The FAA embodies a federal policy of favoring arbitration, with any doubts with respect to arbitrability resolved in favor of arbitration. *See*

*James v. McDonald's Corp.*, 417 F.3d 672, 676–77 (7th Cir.2005). However, a party cannot be compelled to arbitrate if that party did not originally agree to submit the dispute to arbitration. *James*, 417 F.3d at 677; *see also Grundstad v. Ritt*, 106 F.3d 201, 204 (7th Cir.1997). Whether two parties have agreed to arbitrate a dispute is an issue for the courts to decide. *See AT & T Techs., Inc. v. Communc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). To evaluate the validity of an arbitration agreement, federal courts should look to state contract law governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Under Illinois law, agreements to arbitrate are valid as long as there is a mutual promise to arbitrate. *Jenkins v. Trinity Evangelical Lutheran Church*, 356 Ill.App.3d 504, 292 Ill.Dec. 195, 825 N.E.2d 1206, 1213 (2005). Normal contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

The Seventh Circuit Court of Appeals has found that the NGFA's arbitration procedures are reasonable and that contractual agreements to arbitrate before that body should be presumed valid, absent a showing of direct bias. *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 553–557 (7th Cir.2000).

■ Defendant argues that the NGFA has no jurisdiction because neither party to the Contracts was a member of the organization at the time the Contracts were formed. With regard to this jurisdictional concern, this court will turn to Illinois law regarding arbitration agreements and contract formation, and notes the decision of the Illinois Appellate Court in *Van C. Argiris & Co. v. May*, 80 Ill.

App.3d 18, 35 Ill.Dec. 289, 398 N.E.2d 1239 (1979). The case involved an employment dispute between a real estate agent, May, and his former employer, Argiris. The Illinois Appellate Court held that the Arbitration Committee of the Chicago Real Estate Board had jurisdiction over the controversy between the parties. *Argiris*, 35 Ill.Dec. 289, 398 N.E.2d at 1240–43. At the trial court level, Argiris sought to vacate the arbitration award, arguing that the dispute between the parties should not have been subject to arbitration because May was not a member of the Chicago Real Estate Board at the time of his employment (which was when the claim arose) and the Board's bylaws provided that the Arbitration Committee only had jurisdiction over controversies "between members." *Argiris*, 35 Ill.Dec. 289, 398 N.E.2d at 1241. The Appellate Court affirmed the trial court's decision upholding the arbitration award, concluding that, because both parties were members of the Chicago Real Estate Board at the time the complaint was filed, the Arbitration Committee had the authority to resolve the dispute. *Argiris*, 35 Ill.Dec. 289, 398 N.E.2d at 1242–43. The Appellate Court stated that "the language of the [bylaws] does not restrict the Arbitration Committee's jurisdiction to only those controversies to which the parties were members of the Board at the time of the acts or transactions from which the controversies arose." *Argiris*, 35 Ill.Dec. 289, 398 N.E.2d at 1242. The Appellate Court noted that Argiris had not provided any precedent supporting its jurisdictional argument and further noted that written agreements to submit controversies to arbitration are "valid, enforceable and irrevocable save upon such grounds as exist at law or equity for the revocation of any contract." *Argiris*, 35 Ill.Dec. 289, 398 N.E.2d at 1242, *quoting* from the Illinois

Uniform Arbitration Act, 710 ILCS 5/1 (West 2008).

In this case, the basis of Defendant's argument that there was no valid and enforceable agreement to arbitrate is that the NGFA lacks jurisdiction to arbitrate the dispute because neither Defendant nor Agriservices was a member of the NGFA at the time the Contracts were entered. This argument fares no better than the argument made in *Argiris*. There is nothing in the language of the NGFA's arbitration rules to suggest that one party must be a member of the organization at the time of contract formation. The language simply provides that the NGFA "may properly consider a case involving a dispute between ... [a]ctive members of the National and nonmembers, by consent of both parties." NGFA Trade Rules and Arbitration Booklet, page 49, Arbitration Rules of the National Grain and Feed Association, § 3(a)(2), attached as Exhibit 3, Plaintiff's Motion to Confirm Arbitration Award (# 1). In the absence of explicit language to the contrary, NGFA's jurisdiction could reasonably be established at the point when Plaintiff commenced arbitration. *See Asadourian v. Kuni German Motors, LLC*, 2007 WL 4388490, at *4 (D.Or.2007) (holding that, in employment dispute where corporate subsidiary no longer existed at the time arbitration complaint was filed, the plaintiff was bound to arbitrate with the parent company that survived). There is no factual dispute that Plaintiff was both a party to this dispute (as the successor to Agriservices, post merger) and an active member of the NGFA when Plaintiff submitted an arbitration complaint to the NGFA regarding the Contracts. Because Defendant cannot clearly establish that the NGFA's jurisdiction must, of necessity, be established at the moment of contract formation, Defendant has not shown that the agreement to arbitrate is not enforceable.

Further, this court would also note, that Plaintiff's attached affidavit Exhibit 2 from Plaintiff's Reply (# 12) of Richard R. George, Plaintiff's Vice President/Chief Corporate Comptroller and Chief Information Officer, attested that in 2006 Plaintiff owned 100% of the stock of Agriservices. Agriservices, at the time of the contract, was a wholly owned subsidiary of Plaintiff. Plaintiff points to the Membership Policies of the National Grain and Feed Association, § A.1, attached to Plaintiff's Reply (# 12) as Exhibit 1, which states "Any legal entity (joint venture, partnership, etc.) not owned 100 percent by a single NGFA member must make its own application for NGFA membership." The implication being, of course, that any entity owned 100% by a single NGFA member need not make its own application for membership, because it is already considered an NGFA member by virtue of its being owned wholly by another NGFA member.

This court agrees with Plaintiff that Defendant's hyper-technical reading of the Contracts is at odds with the well-established federal policy of favoring arbitration if it appears facially obvious that the two parties contractually committed themselves to the arbitration of disputes. Defendant clearly agreed to arbitrate disputes arising out of the Contracts. Therefore, because there is nothing in the arbitration rules of the NGFA that mandates that jurisdiction be established at the moment of contract formation, and there is no dispute that Plaintiff is an active member of the NGFA and was an active member when it submitted the dispute to arbitration, arbitration was proper under the terms of the contract and the NGFA had jurisdiction to arbitrate the case. *See Argiris*, 35 Ill.Dec. 289, 398 N.E.2d at 1242–43. Also, Plaintiff makes a strong argument that Agriservices was an NGFA member at the time of the con-

tract in 2006 by virtue of its being a 100% wholly owned subsidiary of Plaintiff, an NGFA member. Summary judgment is granted in Plaintiff's favor. The Arbitrator's Award in the amount of $3,557,500, plus interest to accrue at the statutory rate from January 30, 2009 until paid in full is confirmed. Final judgment is entered in conformity with that order. Plaintiff is also allowed to recover the arbitration fees of not less than $10,000.

Attorney Fees

█ Under Illinois law, it is well established that a party seeking to recover attorney fees from another party bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness and a petition for fees must present the court with detailed records containing facts and computations upon which the charges are predicated, specifying the services performed, by whom they were performed, the time expanded, and the hourly rate charged. *Harris Trust and Savings Bank v. Am. Nat'l Bank and Trust Co.*, 230 Ill.App.3d 591, 171 Ill.Dec. 788, 594 N.E.2d 1308, 1312 (1992).

Plaintiff here has provided detailed affidavits in its Reply (# 12) from its attorneys concerning their hourly rates, hours of work, and type of work done during those hours. The affidavits do sufficiently show the court facts and computations upon which the charges are predicated and the affidavits do specify the services performed, by whom they were performed, the time expanded, and the hourly rate charged. *See Harris Trust and Savings Bank*, 171 Ill.Dec. 788, 594 N.E.2d at 1312. Therefore, the court grants the award of attorneys fees and costs to Plaintiff in the total amount of $11,354.88.

Defendant's Motion to Vacate Arbitration Award

As noted earlier, the arguments and issues raised in Defendant's Motion to Va-

cate Arbitration Award (# 8) are nearly, if not completely, identical to those at issue in Plaintiff's Motion for Summary Judgment (# 7), namely that the NGFA did not have jurisdiction to arbitrate the dispute because neither Defendant nor Agriservices was a NGFA member at the time the Contracts were formed. The court has already found that NGFA did have jurisdiction to arbitrate the dispute because there is nothing in the arbitration rules of the NGFA that mandates that jurisdiction be established at the moment of contract formation, and there is no dispute that Plaintiff is an active member of the NGFA and was an active member when it submitted the dispute to arbitration, and therefore arbitration was proper under the terms of the contract and the NGFA had jurisdiction to arbitrate the case. So, for the same reasons that Plaintiff's Motion for Summary Judgment (# 7) confirming the Arbitration Award was granted, Defendant's Motion to Vacate the Arbitration Award (# 8) is DENIED.

IT IS THEREFORE ORDERED:

(1) Plaintiff's Motion for Summary Judgment (# 7) is GRANTED in full. The Arbitrator's Award in the amount of $3,557,500.00 plus interest to accrue at the statutory rate from January 30, 2009 until paid in full, is confirmed. Judgment is entered in accordance with this order. Plaintiff is also allowed to recover the arbitration fees of not less than $10,000.

(2) Plaintiff is entitled to recover the attorneys fees and costs incurred herein from Defendant in the amount of $11,354.88 total.

(3) Defendant's Motion to Vacate Arbitration Award (# 8) is DENIED.

(4) This case is terminated.